**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

Case No. 5:25-mc-00001-TKW-MJF

TALENTSCALE, INC.,

Plaintiff / Judgment-Creditor,

v.

AERY AVIATION, LLC,

Defendant / Judgment-Debtor.
_______________________________________/

**PLAINTIFF'S MOTION TO COMPEL**
**COGENT BANK'S COMPLIANCE WITH SUBPOENA**

Plaintiff Talentscale, Inc. ("Talentscale") respectfully moves to compel non-party Cogent Bank to comply with Talentscale's September 10, 2025 document subpoena.

## INTRODUCTION

The subpoena calls for communications between Cogent Bank and Defendant Aery Aviation, LLC ("Aery"), the judgment debtor, regarding Talentscale or the $1,142,467 federal judgment since it was entered in October 2024. Cogent's corporate representative admitted that such communications exist. Yet Cogent produced just one email and asserted boilerplate objections, while refusing to conduct a custodian level keyword search. During the meet and confer, Cogent's counsel confirmed that no custodian ran keyword searches, Cogent relied on an

unnamed "IT department" person or persons, and Cogent refuses to conduct custodian searches absent a court order.

Cogent's position is inconsistent with Rule 45, which requires a reasonable search for responsive documents. Cogent's refusal is particularly troubling because Cogent and Aery colluded and provided materially inaccurate representations to the tribunal on May 23, 2025, concealing a $3 million credit limit increase issued to Aery weeks earlier on May 6, 2025. The motion to compel should be granted and Cogent should be ordered to pay fees because its noncompliance is not substantially justified.

## LOCAL RULE 26.1(D) DISCOVERY REQUEST AND RESPONSE

### Subpoena Request (quoted verbatim)

> "All communications between Cogent Bank and Aery Aviation, LLC regarding Talentscale, Inc. or the $1,142,467 judgment entered against Aery in favor of Talentscale from October 9, 2024 to present."

### Cogent's Written Objection (quoted verbatim)

> "Cogent objects to this request as it is overbroad and outside the scope of discovery. Specifically, the request as it relates to communications 'regarding Talentscale' is not limited to the subject matter of this action or any claim or defense asserted herein. Cogent additionally objects to this request to the extent it requests Cogent produce documents that it has already produced in this action. Finally, Cogent objects to this request to the extent it seeks documents protected by the attorney-client or work product privilege. Subject to and without waiving these objections, and to the extent not already produced, Cogent will produce non-privileged documents responsive to this request via email to Talentscale's counsel pursuant to the Subpoena."

## Documents Produced

Cogent produced only seven pages of documents, consisting of one email dated August 1, 2025 from Aery to Cogent about a proposed Citizens bank account to receive monetary transfers from Aery to "Cognet [sic] FBO" which Aery claims would purportedly "resolve[] any potential issues with TalentScale too." The remaining documents reflect an unsigned term sheet on Citizens letterhead.

The privilege log contains only one entry, an email from Cogent to Aery regarding settlement dated July 14, 2025. No other documents were produced and no other privilege log entries exist.

## Meet and Confer

Counsel met and conferred by email on November 14, 18, 19, 20 2025 and via Zoom teleconference on November 20, 2025. On November 18, Plaintiff's counsel emailed Cogent's counsel the names of four custodians, Gina Medlock, Abbey Henderson, Kyle Feldman, and Jessica Rasher, and eight keyword search terms, Talentscale, Talent, Scale, Ulmer, Poldrugo, Chase Law, kchase@chaselaw.com, $1,142,467. Plaintiff's counsel requested a spreadsheet reflecting the keyword hits pertaining to each custodian.

On November 18, Cogent's counsel stated that "Cogent's IT department" purportedly stated that "there are no other documents responsive to this subpoena" and that the "only documents that have been withheld are identified on the privilege log." But the privilege log contained only one entry consisting of a July 14, 2025 email about settlement from Cogent to Aery.

During the November 20 meet and confer Zoom call, Cogent's counsel asserted that Cogent was relying on the unnamed person or persons at the "IT department," that none of Cogent's custodians had conducted any keyword searches on their electronic devices, and none of Cogent's custodians will conduct any searches for responsive documents. As discussed herein, corporate representatives for both Cogent and Aery testified that responsive documents and communications exist.

## MEMORANDUM IN SUPPORT

### I. Responsive Communications Exist and are Relevant to the Scope and Nature of the Collusion Between Cogent and Aery to Obstruct Judgment Collection.

Cogent's corporate representative confirmed that communications with Aery about the judgment exist. She testified:

> Q. Have you directly communicated with Aery Aviation regarding payment of the Talentscale judgment?
> A. Yes.

Henderson Dep. 71:15–17.

These communications are at the core of the subpoena and go directly to Cogent's and Aery's conduct during judgment enforcement. They concern how Aery and Cogent addressed the Talentscale judgment in light of Aery's ongoing credit relationship with Cogent and the loan covenants that contemplate payment of judgments and default upon entry of a judgment of this size.

### II. The Loan Agreement Contemplates Payment of Judgments and Treats the Talentscale Judgment as a Default Event.

Cogent's representative testified: "I would say that the loan agreement does contemplate payment of judgments." Henderson Dep. 76:10–17. That testimony is an understatement as to the terms of the June 23, 2021 Business Loan Agreement between Cogent and Aery, as the borrower's payment of judgments does not even

seem negotiable or subject to debate.[1] Despite using the Loan Agreement as a sword against Talentscale to block Talentscale's collection efforts, Cogent and Aery have

---

[1] **Definitions – Laws include Judgments.** "'Laws' shall mean all statutes, laws, ordinances, regulations, orders, writs, **judgments**, injunctions, decrees or awards of the United States or any state, county, municipality or other Governmental Authority." (Emphasis added).

**Section 3.02 – Conditions to Advances.** "The obligation of the Bank to make any Advance is subject to the satisfaction of the following conditions: (a) At the time of and immediately after giving effect to such Advance, no Default Condition or Event of Default that results in a Material Adverse Effect shall exist."

**Section 4.05 – Pending Litigation.** "[T]here are no judgments … pending … which, if adversely determined, could reasonably be expected to cause a Material Adverse Effect."

**Section 4.05 – Compliance with Laws and Agreements.** "To the best knowledge of Borrower, Borrower and their respective Subsidiaries, if any, are in compliance with (a) all requirements of Law and all judgments, decrees and orders of any Governmental Authority…"

**Section 4.19 – Absence of Defaults.** "No Default Condition or Event of Default has occurred or is continuing in any of the Borrower's material agreements that would result in a Material Adverse Effect."

**Section 5.05 – Notices of Material Events.** "Borrower shall furnish to Bank prompt written notice of the following: (a) The occurrence of any Default Condition or Event of Default that would result in a Material Adverse Effect."

**Section 5.05 – Litigation Notice.** "The Loan Parties shall give prompt notice … of any litigation claiming in excess of $1,000,000…"

**Section 5.08 – Payment of Obligations.** "The Loan Parties shall pay and discharge at or before maturity, all of their respective obligations and liabilities (including without limitation all tax liabilities and claims that could result in a statutory Lien) before the same shall become delinquent or in default…"

disregarded these provisions. The subpoena calls for communications reflecting how Cogent and Aery addressed, or failed to address, the judgment within this unambiguous contractual framework and discussions of default, notice, and payment obligations arising from the judgment.

### III. Application of Collateral Under the Loan Agreement Cannot Occur in the Absence of a Default, Yet Cogent Never Declared a Default, and in Fact, Cogent Increased Aery's Credit Limit and then Misled the Tribunal.

Aery's corporate representative testified that, as of October 6, 2025, a year after judgment was entered, "Aery has not been notified of a default" and that because "Aery is not in default until we have been noticed of default," Aery is therefore not in default. Boyd Dep. 125:12–24. Cogent's witness confirmed, asserting that "[t]he bank has not formally placed Aery in default… the bank has not formally defaulted Aery." Henderson Dep. 22:4–14. Cogent explained this by stating

---

**Section 5.12 – Operating Accounts.** Borrower shall establish and thereafter maintain with Bank… an operating depository account which shall at all times have a minimum average daily cash balance of $500,000.

**Section 9.01(e) – Event of Default, Indebtedness.** "Any one or more of the following shall constitute an 'Event of Default' hereunder: (e) any Loan Party (whether as primary obligor or as guarantor or other surety) shall default on any Indebtedness of such Person other than the Obligations and such default results in a Material Adverse Effect."

**Section 9.01(k) – Event of Default, Judgment over $500,000.** (k) any judgment, garnishment, seizure, tax lien, levy or order for the payment of money, not fully covered by insurance or a bond, in excess of $500,000.00 in the aggregate shall be rendered against any Loan Party or any assets of a Loan Party."

that Cogent had "worked diligently with Aery's team to come up with a plan." *Id.* 22:16–21.

At the same time, Aery proclaimed that it will pay the $1.1 million judgment "to the extent that Aery has the financial resources and capability." Boyd Dep. 146:7–9. Aery reported on its tax returns a gross profit of over $6 million in 2022 and a gross profit of $12.6 million in 2023. CB001724. In 2024, Aery reported $29 million in income and a gross profit of $5.5 million. CB002034–CB002035. The debt to Talentscale is listed on Aery's balance sheet as a "long-term liability" in the amount of $753,563, even though the judgment amount is $1,142,467. CB002041.

Cogent confirmed that in early May 2025, Cogent increased Aery's credit limit by $3 million. Henderson Dep. 30:25–31:5. On May 5, 2025, the parties executed the closing statement for the $3 million credit-limit increase from $15 million to $18 million, and the additional credit funded on May 6, 2025. CB002014, CB002018, CB002043.

On May 23, 2025, while Cogent had already prejudiced Talentscale by failing to comply with a prior subpoena, necessitating an earlier motion to compel at ECF No. 82, Cogent's counsel and Aery's counsel failed to inform the tribunal of the $3 million credit increase effectuated weeks earlier on May 6, 2025. ECF No. 93-3.

In open court on May 23, 2025, in response to the Court's question why Talentscale had not received a portion of Aery's revenue, Aery's counsel

represented: "we've been very candid, and Aery just doesn't have it. If they had it, they would be trying to pay it." ECF No. 93-3 at 24–25; Tr. 24:24–25:3. Aery's counsel also failed to inform the tribunal that Aery had been awarded a new $50 million Navy add-on contract.

At the May 23, 2025 hearing, the Court stated: "I don't see any reason why this debt which was incurred in the course of this judgment, which was incurred in the course of supporting their business, why that wouldn't fall within the scope of a proper use of the money." ECF No. 93-3 at 26; Tr. 26:13–16. Cogent's counsel concealed the additional $3 million in liquidity and affirmatively represented to the tribunal that the credit facility was only $15 million, not $18 million, even though the $3 million increase had been effectuated weeks earlier on May 6, 2025: "[t]he revolving line of credit is fully funded right now in the amount of about $15 million." ECF No. 93-3 at 15; Tr. 15:21–23.

Cogent's counsel acknowledged her recent communications with her client, stating that Cogent "let [her] know something yesterday [May 22, 2025]… [that] as of April, 2025, Aery was 30 days past due on their loan payments for all three of the facilities. And so that was as of April. So [she is] guessing that March payment has not been made." *Id.* at 19–20; Tr. 19:12–20:3. Aery simply could have used the $3 million in to pay the $1.1 million judgment. Aery was not in default, so there was no basis to apply the collateral and Cogent did not "own" the funds. Moreover, Aery

and Cogent could have allowed Plaintiff to complete the garnishment payout, as the $921,471 in garnished funds reflected approximately 80% of the judgment balance.

On May 28, 2025, five days after the Cogent's counsel and Aery's counsel misrepresented Aery's financial status, Cogent produced ledgers showing $5,923,136 paid by Aery to Cogent over 42 payments in March and April 2025. ECF No. 93 at 4, ¶ 11. The May 28, 2025 documentation also reflected that, in the post-lien period from March 31, 2025 through May 21, 2025, Cogent extended $6,336,853 in new credit to Aery. *Id*. ¶ 12. This does not include the additional $3 million credit increase funded during the garnishment, as that was also not timely disclosed by Cogent. On September 22, 2025, Cogent's corporate representative testified that Aery is not insolvent. Henderson Dep. 59:14–15. Cogent also confirmed that as of September 2025, Aery's liquidity position has improved as compared with April 2025. *Id*., 29:17-24.

The subpoenaed communications between Cogent and Aery will show how Cogent and Aery discussed the Talentscale judgment, and how to orchestrate nonpayment of it despite the parties' loan agreement, the decision to expand Aery's credit, the failure to declare a default, and their coordinated efforts to obstruct the enforcement of a federal judgment while presenting a false narrative to the Court.

**IV. Cogent's Custodians Failed to Search for Responsive Documents and Cogent's Counsel Obfuscated by Attempting to Blame the Noncompliance on the "IT Department."**

When asked whether she searched for responsive documents, Cogent's corporate representative testified that she did not search, and that she believed an unknown person or persons in the "IT department" conducted the search instead. Henderson Dep. 71:14–72:15. Per the parties' meet and confer communications, no custodian searched his or her own files.

After more than a year of communications, Cogent produced one email and one entry on a privilege log. It is not plausible that a standard custodian-level search for "Talentscale," the judgment amount, and Talentscale's counsel would yield only one email. Cogent's refusal to conduct custodian searches or to use search terms is without substantial justification.

## CONCLUSION

For the reasons discussed above, the motion to compel should be granted.

WHEREFORE, Talentscale respectfully asks the Court to enter an order directing Cogent to produce all non-privileged communications between Cogent and Aery regarding Talentscale or the judgment from October 9, 2024 to the present, awarding Talentscale reasonable expenses and fees pursuant to Rule 37(a)(5) because Cogent's noncompliance was not substantially justified, and granting such further relief as the Court deems proper under the circumstances.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

*/s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 17661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff /Judgment-Creditor Talentscale, Inc.*

## LOCAL RULE 7.1(B) COMPLIANCE

I hereby certify that counsel met and conferred by email on November 14, 18, 19, 20 2025 and via Zoom teleconference on November 20, 2025. On November 18, Plaintiff's counsel emailed Cogent's counsel the names of four custodians, Gina Medlock, Abbey Henderson, Kyle Feldman, and Jessica Rasher, and eight keyword search terms, Talentscale, Talent, Scale, Ulmer, Poldrugo, Chase Law, kchase@chaselaw.com, $1,142,467. Plaintiff's counsel requested a spreadsheet reflecting the keyword hits pertaining to each custodian.

On November 18, Cogent's counsel stated that "Cogent's IT department" purportedly stated that "there are no other documents responsive to this subpoena" and that the "only documents that have been withheld are identified on the privilege log." But the privilege log contained only one entry consisting of a July 14, 2025 email about settlement from Cogent to Aery.

During the November 20 meet and confer Zoom call, Cogent's counsel asserted that Cogent was relying on the unnamed person or persons at the "IT department," that none of Cogent's custodians had conducted any keyword searches on their electronic devices, and none of Cogent's custodians will conduct any searches for responsive documents. As discussed herein, corporate representatives for both Cogent and Aery testified that responsive documents and communications exist.

By: */s/ Kenneth E. Chase*
Kenneth E. Chase

## **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(F), I hereby certify that this memorandum contains 2,805 words, excluding the case style, signature block, and certificates, as counted by Microsoft Word.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on December 1, 2025 which automatically sends notice to all counsel or parties of record.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase