**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

Case No. 5:25-mc-00001-TKW-MJF

TALENTSCALE, INC.,

Plaintiff / Judgment-Creditor,

v.

AERY AVIATION, LLC,

Defendant / Judgment-Debtor.

_______________________________________/

# DECLARATION OF KENNETH E. CHASE

Kenneth E. Chase hereby declares as follows under penalty of perjury:

1. My name is Kenneth E. Chase and being of lawful age and sound mind hereby depose and state as follows.

2. I am counsel for Plaintiff Talentscale, Inc. ("Talentscale"), the judgment-creditor, in the above-captioned matter and I have personal knowledge of the facts stated herein.

3. I make this Declaration in support of Talentscale's Motion to Compel Cogent Bank's compliance with the September 10, 2025 subpoena.

4. Attached as Exhibit A is a true and correct copy of the September 10, 2025 subpoena served on Cogent Bank.

5. Attached as Exhibit B is a true and correct copy of the September 22, 2025 responses and objections to the subpoena served by Cogent Bank.

6. Attached as Exhibit C is a true and correct copy of the September 22, 2025 privilege log served by Cogent Bank.

7. Attached as Exhibit D are true and correct copies of cited pages from the September 22, 2025 deposition of Cogent Bank's corporate representative, Abbey Henderson.

8. Attached as Exhibit E are true and correct copies of cited pages from the October 6, 2025 portion of the deposition of Aery Aviation, LLC's ("Aery") corporate representative, Sean Boyd.

9. Subsequent deposition testimony indicated that Aery was recently awarded a $50 million Navy "add-on" contract payable over two years.

10. The meet and confer correspondence described in the Motion to Compel is correct.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2025.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase

# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | | |
|---|---|---|
| TALENTSCALE, INC.<br>*Plaintiff*<br>v.<br>AERY AVIATION, LLC<br>*Defendant* | ) | Civil Action No. 5:25-mc-00001-TKW |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: COGENT BANK

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All communications between Cogent Bank and Aery Aviation, LLC regarding Talentscale, Inc. or the $1,142,467 judgment entered against Aery in favor of Talentscale from October 9, 2024 to present.

| Place: 111 N. Adams Street, Tallahassee, FL 32302 or via email to kchase@chaselaw.com and epons@chaselaw.com | Date and Time: 09/22/2025 9:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/10/2025

*CLERK OF COURT*

_________________________ OR [signature]

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff/creditor Talentscale, Inc. , who issues or requests this subpoena, are:

Kenneth Chase, 951 Yamato Road, Suite 280, Boca Raton, FL 33431, kchase@chaselaw.com, (305) 402-9800

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 5:25-mc-00001-TKW

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**(Panama City Division)**

Talentscale, Inc.,

Plaintiff,

v. Case No.: 5:25-mc-00001-TKW

Aery Aviation, LLC

Defendant.
_______________________________/

**COGENT BANK'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA TO PRODUCE DOCUMENTS**

Cogent Bank ("Cogent"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 45, hereby serves its responses and objections to the Subpoena to Produce Documents served on September 10, 2025 by Plaintiff, Talentscale, Inc. (the "Document Subpoena"), and states as follows:

**Threshold Objections**

Cogent objects to the Document Subpoena in its entirety upon the following threshold grounds:

1. Cogent objects to the Document Subpoena to the extent that it requires Cogent to create documents, or otherwise imposes obligations upon Cogent beyond what is required under the Federal Rules of Civil Procedure.

2. Cogent objects to the Document Subpoena to the extent it requires production of confidential and sensitive financial or other information. Such information will be produced only upon execution of a mutually agreeable

confidentiality agreement or the entry of a protective order.

3. By agreeing to produce documents responsive to a particular request, Cogent does not admit such documents exist.

## SPECIFIC RESPONSES

In addition to the above objections, Cogent responds to the specific Requests in the Document Subpoena as follows:

1. All communications between Cogent Bank and Aery Aviation, LLC regarding Talentscale, Inc. or the $1,142,467 judgment entered against Aery in favor of Talentscale from October 9, 2024 to present.

**RESPONSE:**

Cogent objects to this request as it is overbroad and outside the scope of discovery. Specifically, the request as it relates to communications "regarding Talentscale" is not limited to the subject matter of this action or any claim or defense asserted herein. Cogent additionally objects to this request to the extent it requests Cogent produce documents that it has already produced in this action. Finally, Cogent objects to this request to the extent it seeks documents protected by the attorney-client or work product privilege. Subject to and without waiving these objections, and to the extent not already produced, Cogent will produce non-privileged documents responsive to this request via email to Talentscale's counsel pursuant to the Subpoena.

Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile:(407) 420-5909

By: */s/ Courtney M. Keller*
Courtney M. Keller, Esquire
Florida Bar No. 028668
Savannah Young, Esquire
Florida Bar No. 1031408
Email: kellerc@gtlaw.com
youngsa@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com

*Counsel for Cogent Bank*

# CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 22nd day of September, 2025, a true and correct copy of the foregoing Cogent Bank's Responses and Objections to Plaintiff's Subpoena to Produce Documents was electronically served on Plaintiff's counsel via email to kchase@chaselaw.com and epons@chaselaw.com.

*/s/Courtney M. Keller*
Courtney M. Keller

GT GreenbergTraurig

**Courtney M. Keller**
**Tel 407.254.2610**
**kellerc@gtlaw.com**

September 22, 2025

**VIA EMAIL**

Eric J. Pons, Esq.
Ken Chase, Esq.
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, Florida 33431
Email: epons@chaselaw.com
kchase@chaselaw.com

**Re: Talentscale, Inc. v. Aery Aviation, LLC**
**United States District Court, Northern District of Florida**
**Panama City Division, Case No. 5:25-mc-00001-TKW**

Dear Eric:

This firm represents Cogent Bank, a non-party to the above-referenced matter. Enclosed please find documents Bates-stamped CB001614 – CB00001620 responsive to the Subpoena to Produce Documents served by your client on September 10, 2025. Also enclosed is a Privilege Log to accompany the production. Finally, we are separately serving Cogent Bank's Responses and Objections to Plaintiff's Subpoena to Produce Documents simultaneously herewith.

Sincerely,

*/s/ Courtney M. Keller*
Courtney M. Keller

CK/smg

# EXHIBIT C

**<u>Talentscale, Inc. v. Aery Aviation, LLC</u>**
**United States District Court for the Northern District of Florida, Panama City Division**
**Case No.: 5:25-mc-00001-TKW**

**<u>COGENT BANK'S PRIVILEGE LOG</u>**

| DOC TYPE | DATE | FROM | TO | SUBJECT | NOTES | PRIVILEGE |
|---|---|---|---|---|---|---|
| Email | July 14, 2025 | Gina Medlock | Sean Boyd; Scott Beale; Abbey Henderson | "FW: [EXTERNAL] FW: Cogent, Aery, Talentscale (for settlement only)" | Discussing email from counsel. | Attorney-Client, Work Product and Common Interest/Joint Defense Privilege |

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

CASE NO.: 5:25-mc-00001-TKW

TALENTSCALE, INC.,
Plaintiff,
vs.
AERY AVIATION, LLC,
Defendant.

---

VIDEOCONFERENCE DEPOSITION OF
COGENT BANK,
by ABBEY HENDERSON

DATE TAKEN: Monday, September 22, 2025
TIME: 1:16 p.m. - 4:35 p.m.
LOCATION: All participants attending remotely

Taken on behalf of the Plaintiff before Fanny R. Kerbel, Shorthand Reporter and Notary Public in and for the State of Florida at Large, appearing remotely, pursuant to Notice of Taking Deposition in the above cause.

REMOTE APPEARANCES

On behalf of the Plaintiff:

CHASE LAW & ASSOCIATES, P.A.
951 W. Yamato Road
Suite 280
Boca Raton, Florida 33431-4452
BY: KENNETH CHASE, ESQUIRE
E-mail: kchase@chaselaw.com
ERIC J. PONS, ESQUIRE
E-mail: epons@chaselaw.com

On behalf of the Defendant:
DAVIS BURCH ABRAMS
555 Belaire Avenue
Suite 340
Chesapeake, Virginia 23320
BY: ERIN McDANIEL, ESQUIRE
E-mail: erin@davisba.com

On behalf of Cogent Bank
and Abbey Henderson:
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue
Suite 650
Orlando, Florida 32801-3311
BY: COURTNEY M. KELLER, ESQUIRE
E-mail: kellerc@gtlaw.com

\- - - - - -

I N D E X


| VIDEOCONFERENCE DEPOSITION OF COGENT BANK, by ABBEY HENDERSON | PAGE NO. |
|---|---|
| Exhibit Index | 3 |
| Direct Examination by Mr. Chase | 5 |
| Certificate of Oath of Witness | 135 |
| Certificate of Reporter | 136 |
| Letter to Witness Re: Reading | 137 |
| Errata Sheet | 138 |


PLAINTIFF'S EXHIBIT INDEX


| Number | Description | Page No. |
|---|---|---|
| Exhibit 1 | Subpoena to Testify at a Deposition in a Civil Action | 134 |
| Exhibit 2 | 2021 Business Loan Agreement | 37 |
| Exhibit 3 | 2025 Amended and Restated Business Loan Agreement | 67 |
| Exhibit 4 | 7-8-25 Letter | 84 |
| Exhibit 5 | Ledger | 102 |
| Exhibit 6 | Supplement to Affidavit of Cogent Bank | 115 |


DEFENDANT'S EXHIBIT INDEX

**** NONE ****

THE COURT REPORTER: Will the attorneys please state their name and stipulate that the witness has presented her government-issued identification by holding it up to the camera, verifying that she is Abbey Henderson, beginning with the noticing attorney.

MR. CHASE: Good afternoon. Kenneth Chase for the plaintiff and judgment creditor Talentscale, Incorporated, Chase Law & Associates. I'm here also with Eric Pons. We do stipulate that the identification provided by the witness is in fact a government-issued identification.

MS. McDANIEL: Erin McDaniel, Davis Burch Abrams, on behalf of Aery Aviation, LLC. So stipulated.

MS. KELLER: Courtney Keller on behalf of Cogent Bank; stipulated.

THE COURT REPORTER: Ms. Henderson, please raise your right hand to be sworn.

Do you swear or affirm that the testimony you are about to give in this matter will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes.

Thereupon:

COGENT BANK, by ABBEY HENDERSON,

was called as a witness and, having been first duly sworn remotely, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. CHASE:

Q. Good afternoon, Ms. Henderson. How are you today?

A. Doing very well, thank you.

Q. Have you previously given a deposition?

A. No.

Q. The rules for a deposition essentially are that if I ask a question, just give a verbal answer. No nodding because the court reporter can't take that down. Does that make sense?

A. Yes.

Q. If you don't understand any of my questions, just let me know. I'll be happy to explain them. Okay?

A. Yes.

Q. If there are any objections, unless you are directed not to answer, the questions do need to be answered. Okay?

A. Yes.

Q. What is your current job title?

A. My current job title is senior vice president, managing director of specialty lending.

Q. Who is your employer?

that if that were to arise, the bank may have -- may call a default and be able to remedy that should it impose any threat to the bank's senior secured position.

Q. Has the bank declared -- the bank, meaning Cogent Bank. Has the bank declared a default as to Aery?

A. The bank has not formally placed Aery in default.

Q. Did Aery default on its loan agreement to Cogent Bank, its 2021 loan agreement?

MS. KELLER: Object to form.

THE WITNESS: There has been default according to our loan agreement. However, the bank has not formally defaulted Aery.

BY MR. CHASE:

Q. Why not?

A. We have worked diligently with Aery's team to come up with a plan that protects the bank's capital and has a path towards our debt repayment. That did not include formally defaulting. However, we reserve our rights to do so.

Q. As we sit here today, Cogent Bank has not declared Aery in default of any contractual agreement, correct?

A. Again, we have not formally defaulted them.

However, we have notified them of default but have not taken any formal action in a formal default.

Q. Is there a paper correspondence or a document, electronic or otherwise, indicating that Cogent has notified Aery of a so-called default?

A. I believe there might be. We do that with our ongoing financial covenant testing. But I'm not 100 percent sure of how that was communicated.

Q. How do you know --

A. It would be required for their audit to be finalized.

Q. Okay. Are there annual audits of Aery's account?

A. There is annual financial audits of Aery's financial performance and an internal annual review that is performed.

Q. Is it on an annual basis? I said annual. Is it periodic? Is it on a case-by-case basis? Is there a standard cadence of the audits?

A. Aery's financial audit is conducted annually.

Q. What does that entail?

A. That's their financial audit with their firm. So normal financial standard auditing practices. The bank is not a party to that.

Q. Is it the bank's position that it is senior to

Q. If in fact that was conveyed, would that not be a counteroffer?
A. Again, I was not aware of any response to the offer that Aery had put forward. I wasn't aware of any other response.
Q. Did somebody at Cogent Bank sign off on providing $250,000 to the law firm of Davis, Burch to initiate an arbitration?
A. I am not aware of that.
Q. So it was not approved by Cogent. So as far as you know, Davis, Burch would be paid $250,000 to initiate an arbitration against Talentscale in 2025.
MS. KELLER: Object to form.
THE WITNESS: I really don't understand the question.
BY MR. CHASE:
Q. If in fact there was a -- well, if you said that the liquidity position of Aery has improved, let's say, in September of 2025 as compared to October 2024; is that right?
A. Mm-hmm. Yes.
Q. Has the liquidity position of Aery improved in September 2025 as compared with April 2025?
A. Yes.
Q. If Aery is in agreement with paying the

judgment, does Cogent Bank have any objection to usage of the credit that it has extended Aery to pay the judgment with that money?

MS. KELLER: Object to form.

THE WITNESS: So Cogent has not been presented with any other plan on a payment. We would need to evaluate that once a plan were to be formally presented to the bank.

BY MR. CHASE:

Q. If the plan was we are going to wire Talentscale $1,142,000, and that is a discount off the full amount owed, and that would be in conjunction with a release, if that was the plan, what would need to be evaluated as to that plan?

A. Ongoing operations of the company and its liquidity position to be able to live through a payment of that size.

Q. Okay. But didn't you --

A. So again, the bank would need to know in certainty that -- we would essentially be funding that. And we would need to understand our repayment and the company's ability to have working capital to get them to a point where they could repay that debt on Cogent's side.

Q. In July of 2025, did Cogent increase Aery's

credit limit by $3 million?

A. I believe it was in May of 2025.

Q. In May of 2025, did Cogent increase Aery's credit limit by $3 million?

A. Yes.

Q. Why?

A. That was a very strategic and well thought out credit decision because of Aery's lack of liquidity. Had we not done that, we would have carried significant overdraft and we needed a path to give Aery working capital to allow them to pay our $15 million that they had owed us at the time back. So it was a prudent credit decision that allowed them the working capital to be able to execute on newly awarded contracts that would provide a pathway not just for Cogent, but for other creditors to get paid.

So we made a tough call, but yes, we increased our credit line to be able to keep Aery in my opinion from having to close its doors.

Q. Why doesn't Cogent Bank just approve a $1.142 million credit increase to pay the judgment that is outstanding?

MS. KELLER: Object to form.

THE WITNESS: We have not been presented with a request to increase Aery's credit exposure to pay

an unsecured judgment. We would need to evaluate it at the time the request was made.

BY MR. CHASE:

Q. Isn't the existence of an open unsecured judgment problematic for the borrower's business?

MS. KELLER: Object to form.

THE WITNESS: So an open judgment, I don't think anybody wants that. Ultimately, being able to keep the company operational so it can repay its debt to Cogent Bank has been Cogent Bank's primary concern.

BY MR. CHASE:

Q. Okay. How does it impede -- if there is a credit limit increase, how does it impede Aery's ability to pay back Cogent to pay back an open judgment?

MS. KELLER: Object to form.

THE WITNESS: It would be how we would underwrite any repayment of a loan. There would need to be sufficient profits from ongoing operations to repay that debt. It isn't providing any benefit to Cogent by increasing our credit exposure. We are not gaining any collateral offset and/or contract offset. So we would need to be able to mitigate those risks. That's our fiduciary responsibility to our shareholders. Every time we

deploy capital, we need to have a pathway towards repayment. And that isn't providing any repayment of the judgment.

Again, if we could get to a clear plan, okay, this is how we can pay this and it won't -- and this is how then Cogent gets repaid. We have not been presented with a plan to evaluate.

BY MR. CHASE:

Q. Whose responsibility is it to present Cogent with a plan?

A. Aery.

Q. So because Aery hasn't been responsible to the point of proposing a plan to Cogent, Cogent is just sitting on its hands?

MS. KELLER: Object to form.

THE WITNESS: Until Aery provides a plan for us to evaluate -- again, we are not the operator. It is not our job to evaluate payments for Aery to pay until they are presented for payment. I don't know how else to clarify that, other than it is not -- we are not an operator.

BY MR. CHASE:

Q. Did Aery present Cogent with a plan to repay the increased $3 million credit line?

A. Yes.

Q. In what form did that take place?
A. What form did it take place?
Q. Is there a specific method of that request being made? Is there an application?
A. There is an application, and then they provided us with projections as well as copies of the recently executed contracts that were our source of both collateral and our source of repayment.
Q. And there was 3 million in excess credit that Cogent was willing to provide on the basis of those representations.
A. That's correct.
Q. Is it Cogent's understanding that all 3 million of that was deployed?
A. That is correct.
Q. In what manner? Who received those payments?
A. I would need to review their bank statements. I believe those were all provided. But you would see who they went -- where those payments went.
Q. So it would go to current service providers; is that correct?
A. That is correct. I would assume they are going to current service providers.
Q. Like staffing companies, for example?
A. I can't say that payroll is definitely the

largest ongoing payable. I don't know who those specific people are. ADP is their PEO. I don't know all the other ins and outs of their payroll obligations. But I do know that payroll is most certainly one of their largest ongoing uses of the proceeds.

Q. It wasn't for the purchase of new equipment, correct?

A. I'm not sure. I believe there were equipment components that were purchased throughout. I don't have the dollar amount. I do believe equipment was purchased with the use of those funds.

Q. To your knowledge, has that application been provided to Talentscale pursuant to our numerous subpoenas, including the one returnable today?

MS. KELLER: Object to form.

THE WITNESS: I don't know if the loan application was provided, but we certainly -- it's something that we have.

BY MR. CHASE:

Q. In that loan application, is any reference made to Talentscale?

A. I don't have the loan application in front of me, but I would assume no.

Q. To your knowledge.

A. To my knowledge, no.

Q. If Talentscale had been in there, would that mean that Cogent approves payment?
A. Honestly, I don't know. If the use of proceeds specifically stated in not the application but in our loan document and closing statement, then that would have been an agreement of Cogent to make sure that that payment was made.
I'm not sure if -- our loan application is very basic. I don't think that there would be a space for that in there.
Q. What do you mean by --
A. Once again, I don't have it in front of me.
Q. Okay. So a loan application is not a particularly substantive document; it's just a basic application.
A. Correct.
Q. And the relationship between Cogent and Aery is extensive to the point where there is a whole lot of information known.
MS. KELLER: Object to form.
BY MR. CHASE:
Q. That would go beyond any application.
A. If information would go beyond an application?
Q. I am going to move on.
Are the terms of the 2025 business loan

agreement materially different than the 2021 business loan agreement?

A. I don't believe so.

MR. CHASE: I am going to show you Exhibit 2, which is the 2021 loan agreement.

(Thereupon, 2021 Business Loan Agreement was remotely introduced as Plaintiff's Exhibit 2 for Identification.)

BY MR. CHASE:

Q. This is marked as Exhibit 2. Can you see that?

A. Yes.

Q. I am going to first turn to page 11 of 124. This is Document 65-1. It says Default Condition. Do you see that?

A. No.

Q. Let me make it larger.

A. Yes, please.

Q. "Default condition shall mean any event or condition that, with the passage of time or giving of notice, or both, would constitute an event of default."

Do you see that?

A. Yes.

Q. Has there been a giving of notice as to an event of default to Aery?

A. Again, I believe we have given them either a default waiver or a covenant, a financial covenant acknowledgment. However, we have not -- we reserve our rights to have it formally placed on or taken any action.

Q. What is a default waiver?

A. It would be a form that we would provide to CPAs. Again back to the audit, the audited financials. We would acknowledge that they have defaulted their loan covenant. However, we are not taking action at that time.

Q. Is it your position that you don't know if Cogent has provided that document?

A. So I don't know specifically for Aery if we modified and pushed the covenant testing out, which the bank may do. We can kind of do and change -- it's at the bank's discretion, really, to formally default.

There are some times with certain special circumstances where we will modify and push the covenant testing so it isn't technically called a covenant waiver where we are modifying and the covenant itself cannot be tested until a future date.

For Aery specifically, I just don't know which avenue credit had decided to move forward with. I just didn't want to tell you we had a waiver and it really

was just a modification of the covenant. I don't know specifically with Aery which route the bank pursued.

Q. Okay. Is it your position or your understanding that one of the two, a covenant testing or a default waiver, has been issued to Aery in lieu of an actual notice of default?

MS. KELLER: Object to form.

THE WITNESS: As it relates to Aery's financial covenants, it's my understanding one of those two would need to be provided to the auditing firm. So either a direct notice of default, however the bank isn't taking any action, or a modification to the covenant. So one of the two would have been provided.

BY MR. CHASE:

Q. I am going to scroll down to page 12 of 124, and I am going to read Laws. Could you read Laws into the record, please.

A. "Laws shall mean all statutes, laws, ordinances, regulations, orders, writs, judgments, injunctions, decrees or awards of the United States or any state, county, municipality or other governmental authority."

Q. Is a judgment defined within the definition of laws?

A. I don't think judgment is defined. It's a part of the laws definition.
Q. So laws would include judgments, correct?
A. According to this definition. It says judgments in the definition.
Q. If Aery is not paying a judgment, is Aery abiding by the laws as defined in this agreement?
MS. KELLER: Object to form.
THE WITNESS: I don't really follow the question there. I don't read this as them saying failure to pay a judgment is -- that's not how I read this definition at all.
BY MR. CHASE:
Q. What does judgments mean then? Under the definition of laws, what does judgment mean to you?
A. These are --
MS. KELLER: Object to form.
THE WITNESS: These are my counsel's documents, so I don't want to say what they meant as far as judgments. This does not specifically say failure to pay a judgment. It does not say that.
BY MR. CHASE:
Q. What do you think judgments means then if it is not failure to pay a judgment?

Q. Do you dispute that a judgment is properly classified as a payable?
A. I'm not exactly sure. I'm not an accountant. I don't know how those get classified.
Q. Is Aery paying its accounts payable as they become due?
A. Again, I don't know how else to answer this question. It is just so broad. If you're speaking about your judgment, then obviously we are sitting where we are because it has not been paid.
I cannot speak to all the accounts payable and all of the vendors that Aery has. That's why I'm not sure how -- what your question is.
Q. Is Aery insolvent?
A. At this point in time, no. But looking back at their performance, they were dangerously, if they were not a year ago -- it was bad. Again, it is my opinion that if we had not stepped in and other secured lenders working together to defer payments, I do believe that Aery would not exist today or we would be fighting through a bankruptcy court.
Q. Couldn't Aery be put into a bankruptcy if it's not paying debts as they become due?
A. They absolutely can be. And Cogent, as a secured lender, would have been able to take some of

our counsel.
Q. It does not seem accurate, does it?
MS. KELLER: Object to form.
THE WITNESS: I trust what is included and prepared by our outside counsel with the loan document. I am sure there was a reason. Without her being present, I don't know.
BY MR. CHASE:
Q. Is it a different attorney? It was Sarah Pape that did this one as well?
A. Yes.
Q. Was she on any of these privilege logs?
A. I don't know.
Q. If there was a communication between -- let me ask you this. Have you directly communicated with Aery Aviation regarding payment of the Talentscale judgment?
A. Yes.
Q. Have you searched your e-mails for responsive documents?
A. Yes. Well, our I.T. department did.
Q. So you didn't conduct the searches yourself.
A. I did not, no. Our I.T. did a full pull of all those e-mails.
Q. Who at the I.T. department?
A. We have multiple people in I.T. I don't know

which member specifically did that. I can get that for you.

Q. I assume it was told to you that you didn't need to search your own files as a custodian.

MS. KELLER: Object to form.

Don't answer that if it's -- are you asking for --

MR. CHASE: I'm not asking about any statements made to counsel.

BY MR. CHASE:

Q. My question is this. Just to confirm, you didn't search any of your own files, correct?

A. I was of the understanding that that was a better way to make sure everything got to where it needed to with I.T. doing the keyword search.

Q. Is there a common interest that Cogent and Aery have? Is there a common interest?

MS. KELLER: Object to form.

THE WITNESS: I believe our common interest is having Cogent Bank be repaid so they can move on.

BY MR. CHASE:

Q. Okay. Is Cogent working with Aery in the failure to pay Talentscale the judgment that is owed by Aery?

MS. KELLER: Object to form.

back at, let's say, 3:10.

MS. KELLER: Perfect.

MR. CHASE: Let's go off the record real quick.

THE COURT REPORTER: I'm off the record.

(Recess taken in the proceedings from 3:01 p.m. to 3:13 p.m., after which the following proceedings were had:)

BY MR. CHASE:

Q. Before we took a break we were discussing paragraph 4.08, which refers to compliance with laws and agreements. If it's in the agreement that laws also includes judgments and 4.08 also includes judgments, is it correct to say that this contract contemplates payment of judgments?

A. I would say that the loan agreement does contemplate payment of judgments.

Q. And given your experience in the lending industry, it is generally a condition of any loan that outstanding judgments owed by the borrower be cleared, right?

A. It is my experience that as a senior lender you will always want to make sure that your position is perfected, and that likely includes the payment of any outstanding judgments or tax liens that may carry a

(Thereupon, Subpoena to Testify at a Deposition in a Civil Action was remotely introduced as Plaintiff's Exhibit 1 for Identification.)

(Thereupon, the taking of the videoconference deposition was concluded at 4:35 p.m. Signature and formalities were not waived.)

CERTIFICATE OF OATH OF WITNESS

STATE OF FLORIDA )
COUNTY OF BROWARD )

I, Fanny R. Kerbel, Shorthand Reporter and Notary Public in and for the State of Florida at Large, certify that the witness, Abbey Henderson, appeared before me via videoconference on Monday, September 22, 2025, and was duly sworn by me.

Signed this 3rd day of October, 2025.

_______________________________

FANNY R. KERBEL, Court Reporter
Notary Public - State of Florida
Commission No. HH 489811
Expires May 16, 2028.

Personally known____________________
OR Produced identification____X______________
Type of identification produced: FL driver's license

CERTIFICATE OF REPORTER

STATE OF FLORIDA )
COUNTY OF BROWARD )

I, FANNY R. KERBEL, Shorthand Reporter, do hereby certify that I was authorized to and did stenographically report the videoconference deposition of Cogent Bank, by Abbey Henderson, the witness herein on Monday, September 22, 2025, that a review of the transcript was not waived; and that the foregoing transcript, pages 1 through 134, is a true and complete record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 3rd day of October, 2025.

FANNY R. KERBEL, Court Reporter

October 6, 2025

Courtney M. Keller, Esquire
E-mail: kellerc@gtlaw.com
Re: Talentscale vs. Aery
Depo of: Cogent Bank, by Abbey Henderson
Taken: Monday, September 22, 2025
Assignment Number: 7621332

The above-referenced transcript is available for review.

Ms. Henderson should read the testimony to verify its accuracy. If there are any changes, Ms. Henderson should note those with the reason on the attached Errata Sheet.

Ms. Henderson should, please, date and sign the Errata Sheet and e-mail to the deposing attorney as well as to Veritext at Transcripts-fl@veritext.com and copies will be e-mailed to all ordering parties.

It is suggested that the completed errata be returned 30 days from receipt of testimony, as considered reasonable under Federal rules*; however, there is no Florida statute to this regard.

If the witness fails to do so, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

*Federal Civil Procedure Rule 30(e)/Florida Civil Procedure Rule 1.310(e).

# EXHIBIT E

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
CASE NO.: 5:25-MC-00001-TKW

TALENTSCALE, INC.,
Plaintiff,
-vs-
AVERY AVIATION, LLC,
Defendant.

_______________________________________/

30(b)(6)
DEPOSITION OF: SEAN BOYD
DATE: MONDAY, OCTOBER 6, 2025
TIME: 1:04 P.M. - 6:03 P.M.
PLACE: VIA ZOOM/REMOTE COUNSEL
STENOGRAPHICALLY
REPORTED BY: JULIE BURRIS

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
CHASE LAW & ASSOCIATES, PA
951 West Yamato Road, Suite 280
Boca Raton, Florida 33431
305-402-9800
kchase@chaselaw.com
Epons@chaselaw.com
BY: KENNETH CHASE, ESQUIRE
ERIC PONS, ESQUIRE

ON BEHALF OF THE DEFENDANT:
DAVIS BURCH ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, Virginia 23320
erin@davisba.com
BY: ERIN MCDANIEL, ESQUIRE

Also Present:
DAREN STURGES, ESQUIRE
10 Edgewater Drive, Apartment 12F
Coral Gables, Florida 33133
305-663-4348
Sturges.darren@gmail.com

\- - -

INDEX

Direct Examination by Mr. Chase.........................4
Certificate of Oath..................................216
Certificate of Reporter..............................217
Read Letter..........................................218
Errata Sheet.........................................219

EXHIBIT INDEX



| Plaintiff's | Description | Page |
|---|---|---|
| Exhibit 1 | Judgment | 6 |
| Exhibit 2 | K-1s | 12 |
| Exhibit 3 | Profit and Loss Statement | 45 |
| Exhibit 4 | Balance Sheet | 45 |
| Exhibit 5 | Letter | 45 |
| Exhibit 6 | 2023 Tax Return | 67 |
| Exhibit 7 | Loan Payments and Balances | 70 |
| Exhibit 8 | Cogent Bank Statements | 106 |
| Exhibit 9 | 2021 Business Loan Agreement | 114 |
| Exhibit 10 | 2025 Business Loan Agreement | 124 |
| Exhibit 11 | Order | 142 |



(Exhibits Retained by the Court Reporter.)

Deposition taken before Julie Burris, Stenographer and Notary Public in and for the State of Florida at Large in the above cause.

*****

THE COURT REPORTER: Do you swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do.

Thereupon,

SEAN BOYD,

having been first duly sworn or affirmed, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. CHASE:

Q. Good afternoon, sir. How are you today?
A. I'm good. Thank you. How are you?
Q. I'm well. Have you given a deposition before?
A. Yes, I have.
Q. And can you state your first and last name for the record?
A. Sean Boyd.
Q. How are you employed?
A. I'm the chief operating officer for Aery Aviation.

Q. This is the 2025 version that I'll show you. There's May 5th, 2025. You were I think opining about whether this provision is in the new one. You want to confirm?
A. Do you mind scrolling back up, please?
Q. Same provision; right?
A. No, I don't know. I mean, again, you're asking me questions about a 37-page document that you're flashing and scrolling. So, I mean, I have not had the opportunity to review it. My recollection was there was not a cash minimum covenant, but I could be mistaken.
Q. Is Aery in default on its loan to Cogent?
A. In default or is it in violation of covenants?
Q. Did you understand my question?
A. No. That's why I was asking.
Q. Do you know what a default is?
A. I do. Aery has not been notified of a default.
Q. Okay. Is Aery in default?
A. We're not in default until we have been noticed of default.
Q. So Aery is not in default as far as you understand?
A. Correct.
Q. Has Aery violated its covenants with the bank?

Q. Okay. I don't think you're understanding what I'm asking you. You just testified that you've done nothing in a year, so I asked you, do you intend to do anything? Answer is yes or answer is no. What's the answer?

A. I don't know.

Q. Your answer is you don't know. So as we sit here, do you have any intention of lifting a fingernail to do a single thing to pay a single dime on this judgment?

A. Mr. Chase, to the extent and at the point in which Aery has the financial resources and abilities to satisfy its obligation including Talentscale, we will do so.

Q. I'm not looking for a talking point. I'm asking for you to testify as the CFO --

A. That was a very specific answer.

Q. Excuse me. Excuse me. I'm asking you to testify as the CFO and the COO of this company that you've already testified has done zero in a year. So I'm asking you to testify under oath as if we're in front of the judge him or herself. Do you intend to take any action to pay this judgment?

MS. MCDANIEL: Asked and answered. You can answer again, Sean.

BY MR. CHASE:
Q. Sir, I couldn't hear you.
A. I've answered your question, Mr. Chase. I don't know how many more times you want to ask it. I'll provide you with the same answer.
Q. What's the answer, sir?
A. To the extent that Aery has the financial resources and the capability in the future to pay its obligations in this judgment, Aery will do so.
Q. Okay. What I hear you saying is as we sit here today, you're going to continue to do nothing; correct?
A. No, that's not correct.
Q. Your little condition situation that you set up, like as long as Aery has this, this, this, this. Does Aery not have what it takes right now to make a single payment?
A. No.
Q. Couldn't make a single -- couldn't pay ten dollars? Aery couldn't do it?
A. Aery could make a ten dollar payment.
Q. So why hasn't Aery made payments?
MS. MCDANIEL: To the extent that this line of questioning has --
MR. CHASE: No. No. I'm sorry, Ms. McDaniel

CERTIFICATE OF OATH

THE STATE OF FLORIDA,
COUNTY OF PALM BEACH.

I, Julie Burris, Florida Professional Reporter, Notary Public, State of Florida, certify that SEAN BOYD personally appeared before me on the 6th of October, 2025 and was duly sworn.

Signed this 20th day of October, 2025.

Julie Burris, FPR
Notary Public, State of Florida
Commission No.: #HH249018
Commission Expires: April 13, 2026

CERTIFICATE OF REPORTER

THE STATE OF FLORIDA,
COUNTY OF PALM BEACH.

I, Julie Burris, Florida Professional Reporter, certify that I was authorized to and did stenographically report the deposition of SEAN BOYD; pages 1 through 215; that a review of the transcript was requested; and that the transcript is a true record of my stenographic notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 20th day of October, 2025.



Julie Burris, FPR
Florida Professional Reporter

ERIN MCDANIEL, ESQUIRE.
Erin@davisba.com
October 20, 2025
RE: Talentscale, Inc. v. Avery Aviation, LLC
10/6/2025, 30(b)(6) Sean Boyd (#7649828)

The above-referenced transcript is available for review.

30(b)(6) Sean Boyd should read the testimony to verify its accuracy. If there are any changes, 30(b)(6) Sean Boyd should note those with the reason on the attached Errata Sheet.

30(b)(6) Sean Boyd should, please, date and sign the Errata Sheet and email to the deposing attorney as well as to Veritext at Transcripts-fl@veritext.com and copies will be emailed to all ordering parties.

It is suggested that the completed errata be returned 30 days from receipt of testimony, as considered reasonable under Federal rules*, however, there is no Florida statute to this regard.

If the witness fails to do so, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions

*Federal Civil Procedure Rule 30(e)/Florida Civil Procedure Rule 1.310(e).