**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**(Panama City Division)**

Talentscale, Inc.,

Plaintiff,

v. Case No.: 5:25-mc-00001-TKW

Aery Aviation, LLC

Defendant.
_______________________________/

# COGENT BANK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Non-party, Cogent Bank ("Cogent"), hereby responds in opposition to the untimely Amended Motion to Compel[1] Cogent Bank's Compliance with Subpoena (D.E. 152) ("Amended Motion to Compel") filed on December 10, 2025 by Plaintiff, Talentscale, Inc. ("Talentscale") and states as follows:

## INTRODUCTION

Cogent, a non-party and non-debtor, has been relentlessly pursued by Talentscale—to the point of harassment—in connection with Talentscale's efforts

[1] On December 1, 2025, the Court entered its Order (D.E. 151) directing Cogent and Talentscale to further confer on Talentscale's Motion to Compel (D.E. 150). The Order required Talentscale to either (a) file an amended motion on or before December 8, 2025, or (b) if resolution was reached, file a notice of such. Talentscale filed its Amended Motion on December 10, 2025—two days past the Court's deadline to do so—without seeking leave to file the untimely motion or even conferring with Cogent as to the late filing. Nevertheless, Cogent timely files this Response addressing the issues raised in the Motion to Compel.

to collect on a judgment it has against Aery Aviation, LLC ("Aery"). Despite not being liable under Talentscale's judgment and otherwise having no obligation to pay Aery's debts, Cogent has gone over and above its obligations to comply with every subpoena served on Cogent—all ***six*** of them—and otherwise providing the endless information requested by Talentscale at great legal expense to Cogent. In response to repeated and overlapping (sometimes identical) subpoenas, Cogent has produced ***over 6,000 pages*** of responsive documents, provided detailed privilege logs, and made its corporate representative available for deposition. Cogent has conducted multiple diligent, comprehensive searches of its entire email domain, and has produced every non-privileged, responsive communication in its possession.

Far from being noncompliant, Cogent has consistently acted in good faith, promptly responding to each demand and providing exhaustive documentation of its lending relationship with Aery, Aery's accounts, and its communications with Aery. Talentscale's claims that Cogent is withholding documents or obstructing enforcement of the judgment are baseless and demonstrably false. And Talentscale's tactics—i.e., filing unsupported complaints with regulatory agencies, repeatedly seeking duplicative discovery, falsely claiming Cogent's counsel made misrepresentations to this Court—reflect a pattern of harassment and abuse of process intended to burden Cogent and drive up its costs. The record is clear: Cogent has fully complied with all legal requirements and has nothing further to produce.

The Amended Motion to Compel is unsupported by the facts and law, and a continuation of Talentscale's harassing witch hunt against Cogent. Enough is enough. The Court should deny Talentscale's motion, and award Cogent its reasonable attorneys' fees and costs under this Court's inherent authority.[2]

## BACKGROUND[3]

### I. Cogent and Aery's Lending Relationship

Defendant, Aery, is a customer of Cogent and maintains a lending relationship with Cogent. *Cogent Aff.* ¶ 3. Aery is an aviation company that, among other things, provides integrated aerospace solutions for government agencies, hospital systems, and corporate operators. *Id*. On June 23, 2021, Cogent and Aery entered into (a) a Revolving Line of Credit Promissory Note ("Line of Credit") in

---

[2] Federal courts possess the "inherent power[]" "to fashion an appropriate sanction for conduct which abuses the judicial process, including an assessment of attorney's fees." *MJM Structural Corp v. Columbus Apartments LLC*, No. 21-20631-CIV, 2021 WL 7540795, at *3 (S.D. Fla. May 14, 2021); *TutoringZone, LC v. Skoolers Tutoring Ctr., LLC*, No. 1:17CV16-MW/GRJ, 2017 WL 8315187, at *2 (N.D. Fla. Dec. 17, 2017) ("Court has the inherent authority to award attorney's fees to sanction Plaintiff for vexatious conduct."). As set forth herein, Talentscale has continued to pursue this frivolous Motion to Compel despite receiving every responsive, non-privileged document in Cogent's possession, and despite undersigned counsel's multiple attempts to explain that there is nothing left for Cogent to produce to Talentscale. This bad-faith, harassing conduct is sanctionable, and Cogent requests its reasonable attorneys' fees incurred in responding to Talentscale's Motion.

[3] The following exhibits are attached hereto in support of this Response, and will be cited throughout the Response as set forth below:

Exhibit "A" – Affidavit of Cogent Bank ("*Cogent Aff.*")
Exhibit "B" – Affidavit of Greenberg Traurig ("*GT Aff.*")
Exhibit "C" – Affidavit of Kevin Schmick ("*Schmick Aff.*")

the original principal amount of $9 million, (b) a Business Loan Agreement, and (c) a Security Agreement. *Id.* ¶s 4-5, 7. These loan documents have been amended—most recently on May 5, 2025 when Cogent and Aery entered into an amendment that increased the Line of Credit to $18 million. *Id.* ¶s 17-18, 20. All loan documents are hereinafter collectively referred to as the "Loan Documents."

Under the Loan Documents, Cogent agreed to loan Aery up to $18 million to "[p]rovide ongoing working capital to support Aery's current and future contracts and provide funding for the purchase of new aircraft and equipment." *Id.* ¶ 19, Exh. 9 at § 2.01(d). In exchange, Aery pledged to Cogent as security for the loan, a first priority security interest in, among other things, all of Aery's accounts receivables, general intangibles, cash or cash equivalents, contract rights, and all insurance proceeds. *Id.* ¶ 21, Exh. 11 at ¶ 1. Cogent perfected this security interest in the collateral by filing a UCC Financing Statement with the Virgina State Corporation Commission on June 24, 2021—over three years before Talentscale obtained its judgment against Aery. *Id.* ¶ 14, Exh. 8.

On June 23, 2021, in connection with the loan—and long before the accrual of Talentscale's judgment—Cogent and Aery also entered into a Blocked Account Agreement, under which the parties created a "Blocked Account" that is held in the name of Cogent Bank. *Id.* ¶ 8, Exh. 4 ¶ 2. Aery directs its customers to send accounts receivable payments to the Blocked Account, and Cogent maintains a first priority

security interest in these receivables. *Id*. ¶ 9, 11, Exh. 4. ¶ 2, 3, 4(a). On each business day (and as required by the Blocked Account Agreement), all funds and amounts on deposit in the Blocked Account are applied to pay down the Line of Credit. *Id*. ¶ 10, Exh. 4 ¶ 9. Cogent has sole dominion and control of the Blocked Account, and Aery has no right or ability to control any of the funds in the account. *Id*. at Exh. 4 ¶ 2, Aery's sole and exclusive interest in the funds in the Blocked Account is limited to the amounts remaining in the account in excess of Cogent's security interest (i.e., the funds remaining after the Line of Credit is fully satisfied). *Id*.

## II. Talentscale's Judgment Against Aery and Efforts to Collect.

On October 19, 2024, Talentscale obtained a judgment against Aery in the amount of $1,142,467.20 in the United States District Court for the Eastern District of Virginia. Cogent was not a party to the action and is not liable under the judgment.

In an effort to collect this judgment, in December 2024, Talentscale began serving Writs of Garnishment on Cogent and numerous other entities. Within Florida alone, Talentscale sought the issuance of ***61 writs of garnishment*****:** seventeen writs of garnishment in this case; six writs of garnishment in Case No. 6:25-mc-00003, in the Middle District of Florida (the "Middle District Action"); and 38 writs of garnishment in Case No. 9:25-mc-80478-AMC, in the Southern District

of Florida (the "Southern District Action").[4] Most of the writs served by Talentscale seek to garnish Aery's accounts receivable, which indisputably implicates Cogent's pre-existing, first-priority secured collateral under the Loan Documents.

With respect to the writs served on Cogent, Cogent answered Talentscale's Writs of Garnishment on February 14, 2025 (D.E. 22 in this action) and on March 26, 2025 (D.E. 16 in the Middle District Action). Both of Cogent's Answers to accurately indicated that Cogent was indebted to Aery in nominal amounts. *See* D.E. 22 ¶ 1 (Cogent was indebted to Aery in the amount of $19.41); Middle District Action, D.E. 16 ¶ 1 (Cogent was indebted to Aery in the amount of $0 excluding the $19.41 that Talentscale garnished in the present action).

Talentscale then began serving Cogent with subpoenas for documents, and Cogent promptly complied with the subpoenas. Indeed, ***to date, Cogent has produced <u>6,000 pages of documents</u> to Talentscale in response to <u>six subpoenas</u> that Talentscale has served on Cogent.*** Copies of the six subpoenas are attached hereto as <u>Exhibits "D", "E", "F", "G", "H" and "I"</u>, respectively. Cogent has also served two privilege logs identifying the documents Cogent is withholding and the

[4] The Court may take judicial notice of the docket and filings in both the Middle District Action and the Southern District Action. *Russell v. United States*, 845 F. App'x 818, 820 (11th Cir. 2021); *Ash v. Strobel*, No. 5:15CV309/MP/CJK, 2016 WL 1567113, at *1 n.1 (N.D. Fla. Mar. 15, 2016).

basis therefore. Copies of the privilege logs are attached hereto as Composite Exhibit "J". A chronology of Cogent's document production is set forth below:

| **Subpoena Date and Jurisdiction** | **Responsive Documents Produced by Cogent & Date of Production** |
|---|---|
| February 4, 2025 Subpoena (N.D. Fla.) and March 19, 2025 Subpoena (M.D. Fla.) (these subpoenas sought identical information) | CB000001-CB000500 (March 27, 2025)<br><br>CB000501-CB001339 (April 16, 2025)<br><br>CB0001340-CB001450 (May 1, 2025)<br><br>CB001451-CB001455 (May 6, 2025)<br><br>CB0001456-CB001504 (May 28, 2025)<br><br>CB001505-CB001534 (May 29, 2025)<br><br>CB001535-CB001613 (June 5, 2025) |
| June 16, 2025 Subpoena (S.D. Fla.) | CB_SDFL00001-CB_SDFL000087 (June 30, 2025)<br><br>CB_SDFL000088-CB_SDFL000134 (July 2, 2025)<br><br>CB_SDFL000135-CB_SDFL004226 (July 10, 2025)[5]<br><br>CB_SDFL004227-CB_SDFL004233 (July 15, 2025) |
| September 9 and 10, 2025 (N.D. Fla.) (again, these subpoenas sought identical information) | CB001614-CB001620 (September 22, 2025)[6] |

[5] Cogent served a privilege log with this production.

[6] Cogent served a privilege log with this production.

| | |
|---|---|
| November 14, 2025 Subpoena (N.D. Fla.) | CB001621-CB002070 (November 24, 2025) |

And on September 22, 2025, Talentscale took the deposition of Cogent's corporate representative.

Talentscale's efforts against Cogent were not limited to the judicial forums. On August 22, 2025, Talentscale filed a complaint against Cogent with the FDIC, launching many of the same unsupported allegations as it asserts in the Motion to Compel and the overarching theme that Cogent has an "inappropriate and unlawful relationship" with Aery. A copy of the FDIC Complaint is attached hereto as Exhibit "K". Cogent responded to the FDIC complaint on September 23, 2025. The FDIC reviewed the file and the information submitted by both Talentscale and Cogent, and, on September 25, 2025, Cogent received a notification from the FDIC that it closed Talentscale's complaint without further action.

**III. The Subpoena at Issue and Its Overlap with a Prior Subpoena.**

On September 9 and 10, 2025, Talentscale served Cogent with Subpoenas (the "September Subpoenas"), both of which requested "All communications between Cogent Bank and Aery Aviation, LLC regarding Talentscale, Inc. or the $1,142,467 judgment entered against Aery in favor of Talentscale from October 9, 2024 to present." *See* Exhibits "G" & "H". On September 22, 2025, Cogent served

its Responses and Objections to the September Subpoenas. A copy of Cogent's Responses and Objections is attached hereto as Exhibit "L". In its Responses and Objections, Cogent agreed to produce non-privileged, responsive documents, ***to the extent such documents had not already been produced***.

Indeed, the June 16, 2025 Subpoena Talentscale served in the Southern District Action (the "June Subpoena") sought documents ***nearly identical*** to those requested in the September Subpoenas, and Cogent had already produced the documents responsive to the June Subpoena just two months prior.[7] Specifically, the June Subpoena sought, among other things: (a) "communications between [Cogent] and Aery…that relate to Talentscale…from January 1, 2024 to the present"; and (b) "communications between [Cogent] and Aery…that relate to the legal, arbitration, or collections proceedings initiated by Talentscale, Inc. against Aery[.]" *See* Exhibit "F" at ¶s 3, 4. As set forth above, Cogent produced 4,233 pages of documents in response to the June Subpoena, which contained dozens of references to the word "Talentscale." *GT Aff.* ¶ 10, 18. Critically, Talentscale has never disputed or otherwise challenged Cogent's production relating to the June Subpoena. Cogent also produced its first privilege log in connection with the

[7] Importantly, Talentscale was represented by the same counsel in the Southern District Action as it is represented by here (i.e., attorney Kenneth E. Chase). Thus, attorney Chase received each and every document Cogent produced in this action and in the Southern District Action.

documents responsive to the June Subpoena on July 10, 2025, and identified thirty-seven (37) documents it was withholding on the basis of privilege. *Id.* ¶ 11. Talentscale never disputed the privilege designations until filing its amended Motion to Compel on December 10, 2025—***five months after the privilege log was served.***

Accordingly, to respond to the September Subpoenas, Kevin Schmick, Cogent's Chief Information Security Officer searched the entire Cogent bank email domain (i.e., ***every Cogent email account***) for all emails between Cogent and Aery from June 24, 2025—the date Cogent last searched for the same documents in response to the nearly identical requests in the June Subpoena—through the date of its search that included the words "Talentscale" OR "Judgment." *GT Aff.* ¶s 18-19; *Schmick Aff.* ¶s 9-10 This search yielded two emails that had not already been produced by Cogent, one of which was privileged. *GT Aff.* ¶s 20-21; *Schmick Aff.* ¶s 11-12.

To confirm that there were no additional documents, Mr. Schmick ***again*** searched Cogent's entire email domain for all emails between Cogent and Aery from June 24, 2025 through the date of the search that included the words "Talentscale" OR "Judgment." *Schmick Aff.* ¶s 13-15. This search yielded no additional documents beyond those found in the previous searches. *Id.* ¶ 16.

Having already produced thousands of pages of communications with Aery

relating to (a) payments or account balances (February 4, 2025 N.D. Fla. Subpoena), (b) ***Talentscale*** (June Subpoena), (c) checking, savings, investment, or loan accounts held by or for the benefit of Aery (June Subpoena), and (d) ***the legal, arbitration, or collections proceedings initiated by Talentscale*** (June Subpoena), in response to Talentscale's earlier subpoenas—some of which encompass the ***exact same information*** sought in the September Subpoenas—Cogent produced to Talentscale one additional email and another privilege log on September 22, 2025.

On November 14, 2025, Talentscale alerted Cogent that it wished to meet and confer relating to the September Subpoenas. On November 18, 2025, Talentscale requested that Gina Medlock, Abbey Henderson, Kyle Feldman, and Jessica Rasher search their emails for they keywords "Talentscale," "Talent," "Scale," "Ulmer," "Poldrugo," "Chase Law," "kchase@chaselaw.com," and "$1,142,467." *GT Aff.* ¶ 22.

In response, Mr. Schmick again searched Cogent's entire email domain—***which necessarily included the email accounts of Gina Medlock, Abbey Henderson, Kyle Feldman and Jessica Rasher***—for the following keywords: "'Talentscale' OR 'Talent' OR 'Scale' OR 'Ulmer' OR 'Poldrugo' OR 'Chase Law' OR 'Line of credit' OR 'increase' OR 'Closing' OR 'kchase@chaselaw.com' OR '$1,142,467.'" *GT Aff.* ¶s 23-24 ; *Schmick Aff.* ¶s 17-21. This time, Mr. Schmick searched for documents during the timeframe of October 9, 2024 to the present.

*Schmick Aff.* ¶s 17-21.

This search yielded approximately 208 emails total. *Id.* ¶s 22-24. Mr. Schmick provided all 208 emails to undersigned counsel, and undersigned counsel reviewed the emails and removed non-responsive and duplicate documents. *GT Aff.* ¶s 25-17. This resulted in eight additional responsive documents that had not already been produced by Cogent, four of which were privileged. *Id.* ¶s 28-29 On December 7, 2025, undersigned counsel provided Cogent with screenshots showing the 208 total hits generated by Mr. Schmick's search. *See* Email Exchange attached hereto as Exhibit "M". And on December 8, 2025, Cogent provided an additional four emails and an updated privilege log to Talentscale. *GT Aff.* ¶ 29.

Despite Cogent's voluminous productions, exhaustive searches and re-searches (of the exact information requested by Talentscale), and detailed privilege logs, Talentscale still maintains in the Amended Motion to Compel that Cogent has not complied with the September Subpoenas. Talentscale's arguments are based solely upon its unsupported conspiracy theory that Aery and Cogent are somehow colluding to prevent Talentscale from collecting on its judgment—a wishful theory that has zero evidentiary support and a theory that certainly cannot sustain Talentscale's current Motion.

## ARGUMENT AND MEMORANDUM OF LAW

Under Federal Rule of Civil Procedure 45, a party is authorized to issue a

subpoena for the production of documents from a non-party. *See In re Guriev*, No. 25-CV-20896-MOORE/Elfenbein, 2025 U.S. Dist. LEXIS 232879, at *4 (S.D. Fla. Nov. 24, 2025). Rule 45 "requires" the Court to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Miami-Dade Cnty. v. Johnson Controls, Inc.*, No. 10-20881-CIV, 2011 WL 1548969, at *4 (S.D. Fla. Apr. 21, 2011) (finding the requesting party should bear the reasonable costs of compliance with the subpoena) (internal quotations omitted).

In searching for and gathering responsive documents, the producing party should conduct a search for information "reasonably available to them through their agents, attorneys, or others subject to their control . . ." *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 671 (N.D. Fla. 2010) (citing *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)). However, "'there is no obligation on the part of a responding party to examine ***every scrap of paper*** in its potentially voluminous files in order to comply with its discovery obligations. Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy.'" *F.D.I.C. v. Bowden*, No. CV413-245, 2014 WL 2548137, at *8 (S.D. Ga. June 6, 2014) (quoting *Fed. Deposit Ins. Corp. v. Giannoulias*, No. 12 C 1665, 2013 WL 5762397, at *2 (N.D. Ill. Oct. 23, 2013)) (emphasis in original).

## I. Cogent Fully Complied with the September Subpoenas (Multiple Times).

Talentscale alleges that Cogent has not complied with the September

Subpoenas' request to produce Cogent's communications with Aery relating to (a) Talentscale and (b) Talentscale's judgment. But not only has Cogent produced (or identified in a privilege log) dozens of communications responsive to the September Subpoenas, Cogent has run the exact searches requested by Talentscale, and has produced every responsive, non-privileged document in its possession. The only thing Cogent has not arguably done is provide Talentscale with a non-existent "spreadsheet" showing the hits that each search term had on each custodian, and Cogent simply cannot create something that does not exist.

### A. Cogent Produced Dozens of Documents Responsive to the September Subpoenas (Not Just One, as Talentscale Alleges).

First, Cogent has produced dozens of email communications responsive to the September Subpoenas, and those communications are all that exist. *See Schmick Aff.* ¶s 8-11, 13-16, 18-26.

As explained above, the September Subpoenas sought the ***same communications*** that were requested in the June Subpoena. *Compare* Exhs. "G" & "H" *with* Exh. "F" at ¶s 3, 4. In response to the June Subpoena, Cogent produced approximately 4,233 pages of documents. *GT Aff.* ¶ 10. Those 4,233 pages included 19 email communications referencing "Talentscale." *Id*. ¶ 18 Cogent also served a privilege log identifying 37 documents that Cogent withheld on the basis of privilege. *Id*. ¶ 11. So prior to the September Subpoenas, Cogent produced at least ***19 emails*** that were responsive to the September Subpoenas and withheld ***37***

communications that were responsive to the September Subpoenas on the basis of privilege.

After receiving the September Subpoenas, Cogent updated its search for documents and located ***two*** additional documents responsive to the September Subpoenas, one of which was withheld on the basis of privilege. *Id*. ¶s 12, 14, 19-21; *Schmick Aff.* ¶s 8-11. Cogent even re-ran its search on September 19, 2025, which led to the same results. *Schmick Aff.* ¶s 13-16. The additional document and privilege log were provided to Talentscale on September 22, 2025. *GT Aff.* ¶s 14-15.

Then, as if those searches were not enough, after receiving Talentscale's demand for additional search terms two months after Cogent's production, Cogent re-ran the search again using all of the search terms requested by Talentscale. *GT Aff.* ¶s 22-24; *Schmick Aff.* ¶s 17-25. Cogent located an additional ***eight*** emails responsive to the September Subpoenas that had not been produced in any prior production, four of which were privileged. *GT Aff.* ¶ 28.

Thus, while Cogent produced just one additional email on September 22, 2025 that was responsive to the September Subpoenas, Cogent has been producing documents responsive to the September Subpoenas in its prior productions to Talentscale since—at least—July 2025. Indeed, in total, Cogent has produced at least ***24 email communications*** that were responsive to the September Subpoenas,

and it has withheld 42 additional communications responsive to the September Subpoenas on the basis of privilege. Beyond the sheer number of documents Cogent has produced, Cogent's Chief Information Security Officer confirmed that there are no additional documents responsive to the September Subpoenas.[8] *See Schmick Aff.* ¶s 8-11, 13-16, 18-26. Cogent's compliance with the September Subpoenas cannot be questioned.

### B. Cogent's Keyword Searches Were Reasonable and Were Not Done in the Manner Talentscale Alleges in the Motion to Compel.

In gathering documents to produce in response to the September Subpoenas, Cogent initially searched (on two separate occasions) for communications between Cogent and Aery hitting on the keywords "Talentscale" OR "judgment"—the exact communications sought in the September Subpoenas. *See* Schmick Aff. ¶s 7-9, 13-16. These search terms were reasonable in light of the language used in Talentscale's September Subpoenas. Contrary to Talentscale's argument in the Motion to Compel (D.E. 150), at no time did Cogent conduct a search that required both terms—"Talentscale" AND "Judgment"—to be included in the responsive documents.

It was not until ***two months after*** Cogent responded to the September

[8] In the Motion to Compel, Talentscale states (in a footnote) that Cogent did not comply with the September Subpoenas because it did not provide any communications responding to the March 21, 2025 email produced on December 8, 2025. *See* D.E. 152 at n. 1. Talentscale's statement presupposes that there was a written response to the email. There was not.

Subpoenas that Talentscale took issue with Cogent's search terms. Talentscale's counsel insisted that there is no way that there are so few responsive documents because, in his words, Cogent and Aery were surely "colluding" to harm Talentscale and demanded that Cogent expand its search to the keywords "Talentscale," "Talent," "Scale," "Ulmer," "Poldrugo," "Chase Law," "line of credit," "increase," "closing" "kchase@chaselaw.com," and "$1,142,467." *See* November 18, 2025 Email attached hereto as Exhibit "N".

In a good faith effort to prove to Talentscale that the conspiracy documents it sought simply do not exist, Cogent's IT department obliged Talentscale's requested search terms and ran a search of Cogent's entire email domain for the following terms: "Talentscale," "Talent," "Scale," "Ulmer," "Poldrugo," "Chase Law," "line of credit," "increase," "closing" "kchase@chaselaw.com," OR "$1,142,467." *See Schmick Aff.* ¶s 17-21. This search produced 208 total emails, nearly all of which were either non-responsive or had already been produced to Talentscale in response to the prior subpoenas. *Schmick Aff.* ¶s 22-25; *GT Aff.* ¶s 25-28. Indeed, the search yielded only four additional, non-privileged documents. *GT Aff.* ¶ 28. These documents were provided to Talentscale on December 8, 2025, along with an updated privilege log. *Id*. ¶ 29.

It is thus abundantly clear that Cogent has made a diligent search for responsive documents. It not only ran an initial search for relevant keywords in its

entire email domain, but it ran additional searches for the exact keywords requested by Talentscale. Nothing more is required of Cogent. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see also In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2016 WL 11689073, at *1 (N.D. Ala. June 20, 2016) ("Parties simply do not have the unfettered right to seek discovery from non-parties. Implied throughout Rule 45 is the concern that non-parties ***not*** be unduly burdened with discovery. Of course, third parties are not exempt from producing evidence in their possession, but the requesting party must demonstrate need and must limit the discovery to reduce the burden it imposes.") (emphasis in original).

### C. Cogent's Searches Encompassed the Relevant Custodians (Contrary to Talentscale's Representations That No Custodians Were Searched).

In responding to each of the subpoenas, including the September Subpoenas at issue, Cogent's IT department searched Cogent's ***entire email domain***, which embraced every custodian with a cogentbank.net email, including, without limitation the custodians who Talentscale insisted be searched (i.e., Gina Medlock, Abbey Henderson, Kyle Feldman and Jessica Rasher). *Schmick Aff.* ¶s 9-10, 14-15, 18-19, 23.

Talentscale seemingly contends that this search was insufficient because

every individual custodian should have searched their own individual email accounts, but this simply is not the rule (nor is it even sensical). Contrary to Talentscale's contentions, every individual custodian need not conduct a search of their individual inbox if such search has already been conducted by Cogent's IT department. *See Cf. Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686 (S.D. Fla. 2012) (suggesting that search by chief information officer of all company computers would be sufficient if completed); *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 (S.D.N.Y. 2019) (noting that "simply asking custodians to review the emails is a "non-forensically sound method of collection" and is "not ideal"); *Draper, Inc. v. MechoShade Sys., Inc.*, No. 1:10-CV-1443-SEB-DKL, 2012 WL 287480, at *11 (S.D. Ind. Jan. 30, 2012) (denying motion to compel a party to "adequately search the records of specified custodian" where there was no basis for finding that the party has not done so).

### D. The "Chart" Requested in the Motion to Compel Does Not Exist, and Cogent Otherwise Provided a Similar Document That Achieves the Same Purpose.

Talentscale makes much ado about a requested "chart" showing the "hits mapped out…by keyword and custodian." *See* Amended Motion to Compel at pp. 3, 5. But the way that Cogent ran its search for responsive documents does not create such "chart." As explained in great detail above, Cogent searched its entire email domain for the requested keywords, and such search did not yield a breakdown of

search terms or custodians. And—even if properly requested by Talentscale in its September Subpoenas, which it was not— Cogent has no obligation to create something that does not otherwise exist. *See Castleberry v. Camden Cnty.*, 331 F.R.D. 559, 564 (S.D. Ga. 2019) ("The Court will not require a nonparty to bear the expense of creating a new document in response to a subpoena"); *Sullivan v. Target Corp.*, No. 1:19-CV-1086-CC, 2021 WL 9721274, at *3 (N.D. Ga. Mar. 31, 2021) (agreeing that recipient of a subpoena is not obligated to produce documents that do not exist); *Antoine v. Sch. Bd. of Collier Cnty., Fla.*, No. 216CV379FTM38MRM, 2019 WL 4453081, at *8 (M.D. Fla. Jan. 16, 2019) (declining to compel production of a spreadsheet that did not exist); *Warrington v. Patel*, No. 2:22-CV-77-JES-KCD, 2024 WL 5078002, at *2 (M.D. Fla. Dec. 11, 2024) ("the Court cannot compel the company to create documents not already in existence."). In fact, creating this "chart" would likely require a third-party vendor to re-run the multiple searches Cogent already conducted and categorize the information, and in any event, the search ***would still yield the same 208 documents that Cogent has already provided to Talentscale***.

Nevertheless, in a good faith effort to provide as much information as possible to Talentscale, undersigned counsel provided Talentscale with screenshots showing the exact searches that were conducted, and the results of those searches, which included the number of "total messages" yielded. *See* Exhibit "M." As such, Cogent

has reasonably complied with all of Talentscale's requests. Cogent has produced every document in its possession, and—though it had no obligation to do so—provided Talentscale with information reflecting the total number of "hits" resulting from Talentscale's requested keyword search.

To the extent Talentscale attempts to impose any further burden on Cogent to run additional searches, this should not be an expense Cogent is forced to incur, and Cogent should be entitled to the reasonable costs of any further document review and production, including attorneys' fees. Under Rule 45(d)(1), "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court… must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." In determining whether an award of attorneys' fees under Rule 45 is proper, "the relevant question is whether there has been a breach or violation of counsel's duty to take reasonable steps to avoid imposing undue burden or expense upon the person subject to the subpoena." *BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-CV-3886-AT, 2017 WL 11627485, at *11 (N.D. Ga. July 3, 2017). As explained above, despite knowing that thorough searches have already been conducted and that thousands of pages of documents have already been produced—and despite Cogent searching its entire email domain for the exact

keywords requested by Talentscale—Talentscale continues to demand that there are more responsive documents. Cogent should not be forced to bear this undue burden, and should it be forced to conduct any further searches with relation to the September Subpoenas, Cogent should be awarded the costs of any additional searches, including its attorneys' fees, under Rule 45. *See In re Hornbeam Corp.*, No. 14-CV-24887, 2019 WL 5106768, at *6 (S.D. Fla. Sept. 27, 2019); *Richert Funding, LLC*, 2017 WL 11627485, at *12.

During their numerous good faith conferences leading up to the filing of the Amended Motion to Compel (and again during their December 5, 2025 court-ordered good faith conference), Cogent's undersigned counsel explained to Talentscale's counsel the exact process by which Cogent searched, gathered, and produced the documents served in response to the September Subpoenas. Such discussions should have been sufficient to inform Talentscale as to the information that it has misrepresented in its Original Motion to Compel and Amended Motion to Compel. Unfortunately, Talentscale misconstrued (or otherwise ignored) the entirety of undersigned counsel's explanations. *See* Exhibit "M."

Simply put, Cogent has conducted a thorough search for documents, has searched all possibly relevant custodians, has produced every responsive document in its possession, and was not otherwise obligated to provide a "spreadsheet" that does not exist. The Motion to Compel must be denied.

## II. Talentscale Waived Any Objection to Cogent's Privilege Designations, Which Were Otherwise Proper.

In the Amended Motion to Compel, Talentscale takes issue—for the first time, and without any citation to authority—with Cogent's privilege designations. As explained above, Cogent first served its privilege log on July 10, 2025. This privilege log identified 37 communications that Cogent was withholding on the basis of privilege.

As a threshold matter, any objection as to Cogent's designation of these documents as privileged—five months prior to the Motion to Compel—have been waived. Talentscale's counsel questioned undersigned counsel about the privilege designations on July 10, 2025, and undersigned counsel responded to explain why the common interest exception to privilege waiver applies. *See* July 10, 2025 email exchange attached hereto as Exhibit "O". Talentscale's counsel never raised the issue with the Court until its filing on December 10, 2025—five months later. This was too late. *In re Hartigan*, No. 13-14612-BKC-AJC, 2014 WL 702391, at *4 (Bankr. S.D. Fla. Feb. 24, 2014) ("Arguments that a party fails to timely raise, or raises but then fails to press responsibly throughout litigation, are waived."); *Penrod Bros., Inc. v. City of Miami Beach, Fla.*, No. 1:23-CV-23362, 2024 WL 5007834, at *2 n.1 (S.D. Fla. Dec. 6, 2024) (contention that unredacted versions of the emails should be produced because they were not privileged or protected at all, was waived where defendant failed to raise it in its motion and cite authority in support thereof.).

Moreover, it is well-settled that the common interest privilege protects communications made between two different entities at the direction of an attorney or with an attorney in pursuit of a common legal interest. *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 439 n.2, 440 (Fla. 3d DCA 1987); *Barnett Banks Trust Co., N.A. v. Compson*, 629 So. 2d 849, 851 (Fla. 2d DCA 1993); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 594 (S.D. Fla. 2013); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990). Here, Aery and Cogent maintain a common interest privilege relating to protection of Cogent's priority interest in Aery's accounts receivables. And the common interest privilege applied to the communications withheld as they were all made in furtherance of that common legal interest. Thus, Cogent has asserted a valid basis for withholding the privileged communications.

## III. Talentscale is Not Entitled to Recover Its Attorneys' Fees Under Rule 37.

Talentscale contends that it is entitled to recover its attorneys' fee under Rule 37(a)(5). However, Talentscale cannot recover its attorneys' fees against Cogent—a non-party—under Rule 37. Indeed, under its express terms Rule 37(a)(5) applies only to parties. Specifically, Rule 37(a)(5)(A) provides, in pertinent part:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

To be sure, "multiple courts" have held that Rule 37 "does not apply to motions to compel compliance with a Rule 45 Subpoena." *ADP, LLC v. Ultimate Software Grp., Inc.*, No. 17-CV-61272, 2017 WL 7794274, at *3 (S.D. Fla. July 26, 2017) (citing cases); *see also Fit Tea LLC v. Alani Nutrition LLC*, No. 6:23-MC-1-WWB-LHP, 2023 WL 2351657, at *3 (M.D. Fla. Mar. 3, 2023) ("Other than a lone citation to Rule 37(a)(5)(A), [the movant] has provided no authority for making such an award of attorneys' fees under Rule 45. As such, [the movant's] request for an award of attorneys' fees and expenses incurred in bringing its motion will be denied."); *Berkley Ins. Co. v. Suffolk Constr. Co., Inc.*, No. 19-23059-CIV, 2020 WL 10057924, at *2 (S.D. Fla. Oct. 30, 2020); *Smith v. Jacobs Eng'g Grp., Inc.*, No. 4:06CV496-WS/WCS, 2008 WL 4264718, at *3 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 4:06 CV 496 WS, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) ("Rule 45 is the only authority for enforcement of such a subpoena; sanctions pursuant to Rule 37 are not available.") (citing cases).

Rule 37 is the only basis Talentscale asserts for its alleged entitlement to attorneys' fees. Accordingly, because attorneys' fees cannot be taxed to a non-party—like Cogent—under Rule 37, even if Talentscale succeeds in its Motion to Compel (which it should not), Talentscale should not be awarded its attorneys' fees.

## IV. Although Not Germane to the Amended Motion to Compel, Cogent Must Address the Numerous Misrepresentations and Scandalous Statements Made Therein.

### A. Talentscale Misrepresents Cogent and Aery's Relationship.

In its attempt to justify its excessive requests for communications—which, as set forth above, have already been produced—Talentscale mischaracterizes the lending relationship between Cogent and Aery beyond recognition. Cogent is compelled to clear the record with this Court as Talentscale's misrepresentations have now been repeated in multiple filings.

Talentscale first mischaracterizes the May 2025 credit limit increase. Contrary to Talentscale's assertions, the credit limit increase was made to assist Aery in getting back on its feet, and to specifically support a new bridge contract that Aery was negotiating that would ultimately allow Aery to repay Cogent in full, as well as Aery's other creditors—including Talentscale. *Cogent Aff.* ¶s 23-25. Without the May 2025 credit line increase, Aery would not have been awarded the bridge contract that Cogent believes will ultimately lead Aery out of its liquidity problems. Indeed, Cogent believes the credit increase will help Aery become operationally stable and ultimately assist in reducing the Line of Credit back down to the original principal amount of $9 million by June 2026. *Id.* This will reflect Aery's improved profitability and lower the weight of its debt burden. Ultimately, this may result in excess funds sufficient to pay unsecured creditors like Talentscale,

but no excess has yet materialized.

Talentscale seemingly implies that the increased line of credit should have been made available to pay Talentscale's judgment. But the Line of Credit has been fully funded since early 2025. As a result, even though Aery's ongoing operations led to payments in and out of the Blocked Account (in which Cogent has a secured interest in the incoming accounts receivable), there is no excess—even under the Line of Credit—to fund the payment of Talentscale's judgment. Talentscale's view that Aery has access to millions in free money is not realistic.[9]

Indeed, Cogent cannot simply increase the line of credit to cover the Talentscale judgment as there is no corresponding security like there is with the accounts receivable flowing from the bridge contract. Without corresponding security, it would be an unsound credit decision, and, in effect amount to an unsecured loan from Cogent to Aery to pay Talentscale's judgment. That is indisputably not required by the law or by the Loan Documents.

---

[9] Moreover, Talentscale misunderstands the nature of the documents produced by Cogent. Talentscale has argued that Cogent produced "ledgers" showing $5,923,196 paid by Aery to Cogent over 42 payments in March and April 2025. D.E. 150 at p. 9. This is, again, not accurate. What these documents show is Aery's accounts receivable in the Blocked Account being used to pay down the line of credit, exactly as contemplated by the unambiguous terms of the Loan Documents. *Cogent Aff.* ¶ 9-10. Moreover, Talentscale does not point out that those same ledgers show late fees being assessed on all three facilities during the month of April 2025, meaning the loans were, indeed, past due. *See* DE 95-2 at CB001456-57 (late fees assessed on the Line of Credit on April 9, 2025 in the amount of $4,506.40 and on May 15, 2025 in the amount of $5,457.14); *Id*. at CB001470 (late fees assessed on Subnote A on April 9, 2025 in the amount of $1,074.24 and on May 15, 2025 in the amount of $1,087.49); *Id*. at CB001472 (late fees assessed on Subnote B on April 9, 2025 in the amount of $4,289.91).

Talentscale has further argued that "application of collateral under the Loan Agreement cannot occur in the absence of a default." D.E. 150 at p. 6. Tellingly, Talentscale cites no provision of the Loan Documents to support this assertion. Because it cannot. The structure of the agreement between Cogent and Aery permits Cogent to apply Aery's incoming accounts receivable to pay down the Line of Credit without declaring a default. Indeed, such accounts receivable are paid into the Blocked Account, in which Cogent is the only signatory and thus maintains exclusive control over the funds in the Blocked Account. To be sure, the Blocked Account Agreement provides in pertinent part:

> Borrower hereby agrees and confirms that (a) it has no right or ability to direct the documents, amounts, funds, cash or payments held at any time in the Blocked Account, (b) Lender has exclusive dominion and control over the Blocked Account and all funds or amounts in the Blocked accounts in all respects, and (c) it has no dominion or control whatsoever over the Blocked Account or any funds or amounts in the Blocked Account, and Borrower hereby disclaims any and all rights of any nature whatsoever to control or otherwise direct or make any claim against the funds, cash or other amounts in the Blocked Account at any time. *See Cogent Aff.* at Exh. 4 ¶ 2.

Then, under the clear terms of the Loan Documents, on a daily basis, Cogent is to transfer all available funds deposited into the Blocked Account to the Line of Credit in order to pay down the credit line, and all payments into the Blocked Account are held for the benefit of Cogent, and subject to Cogent's first priority lien. *See id*. 10-12, Exh. 4 ¶s 2-4.

Where, as here, the loan documents provide that the creditor may setoff its

debts using the debtor's account balances in absence of any default, such loan documents control and are enforceable. *In re MCB Fin. Grp., Inc.*, 461 B.R. 914, 919 (Bankr. N.D. Ga. 2011) ("under Florida law the parties to a note can agree to grant a lender the right to setoff against a debt that is not mature."); *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1367 (S.D. Fla. 2003) ("Under Florida law, when an individual owes a debt to a bank in the form of an outstanding loan or a negative balance, or overdraft, in a bank account, the bank has a common-law right to transfer funds from another account owned by the same bank customer to satisfy the outstanding debt…he bank may also set forth its right to offset funds in the account agreement, which is a contract signed by the bank customer."); *see also Credit All. Corp. v. Nat'l Bank of Georgia, N.A.*, 718 F. Supp. 954, 957 (N.D. Ga. 1989) (parties may contract to subject unmatured debts to a bank's right of setoff).

Nor does Talentscale have any standing to assert any rights based upon Cogent's compliance (or non-compliance) with the Loan documents. *See Montgomery Bank, N.A. v. Alico Rd. Bus. Park, LP*, No. 2:13-cv-802-FtM-29CM, 2014 U.S. Dist. LEXIS 159807, at *7 (M.D. Fla. Nov. 13, 2014) (non-party to loan agreements lacked the standing necessary to challenge the interpretation of loan documents where it was neither an intended beneficiary nor an incidental beneficiary); *Paramount Disaster Recovery LLC v. Amica Mut. Ins. Co.*, No. 2:16-CV-14566, 2017 U.S. Dist. LEXIS 216839, at *8 (S.D. Fla. Dec. 6, 2017) ("Under

Florida law, a nonparty to an agreement 'has no standing to challenge the rights of the parties in the agreement.'"); *Fontaine v. JP Morgan Chase Bank, N.A.*, No. 3:16-cv-1301-J-34MCR, 2017 U.S. Dist. LEXIS 139839, at *14 (M.D. Fla. July 26, 2017) (plaintiffs lacked standing to challenge the non-compliance with agreement's terms because they were not parties to the relevant agreement).

Regardless, Talentscale's repeated (and baseless) urgings that Cogent somehow has an obligation to pay Aery's debts, or extend further credit to Aery so that Aery may pay its debts, is absurd and a red herring. The nature of the Loan Documents, Cogent and Aery's lending relationship, and Cogent's conduct during Talentscale's judgment enforcement is simply not the issue before the Court. The only issue before the Court is whether Cogent has produced all documents responsive to the Subpoena. As set forth above, the answer is unambiguously yes.

**B. Cogent Made No Misrepresentations to the Court.**

Talentscale repeatedly alleges that Cogent and Aery (a) "colluded" to provide inaccurate information to the Court at the May 23, 2025 hearing on Talentscale's Motion for Extension of Time (D.E. 78), the Motions to Dissolve the Wirt of Garnishment issued to Cleveland Clinic Foundation (D.E. 65, 68, 77), and Talentscale's Motion to Compel (D.E. 82), and (b) "concealed" the $3 million credit limit increase issued to Aery on May 6, 2025. *See* D.E. 150 at pp. 2, 7, 8. This is patently inaccurate.

For starters, Talentscale has no evidence—because none exists—of any collusion or conspiracy between Cogent and Aery with respect to the payment or nonpayment of Talentscale's judgment. It is time for those baseless attacks to stop. All Cogent has done is exercise its valid legal rights to protect its first-priority security interest—actions that this Court has already found to be legally tenable in dissolving the Cleveland Clinic Writ of Garnishment, and again in denying Talentscale's motion for reconsideration. *See* D.E. 84, 92, 106.

Nor did undersigned counsel "conceal" anything. Indeed, undersigned counsel's statements at the hearing that Aery's loan was past due are undeniably accurate. At that time, and to date, Aery's line of credit is fully funded and Aery's monthly payments were late. And as it relates to counsel's statement that the line of credit was only $15 million, rather than $18 million, at that time, counsel was not aware that the line of credit had been increased, but the result would be the same as the $18 million line of credit was also fully funded at that time and Cogent was, at all material times, owed far in excess of the amounts Cleveland Clinic was holding in response to the writ of garnishment served on it, which the Court even acknowledged. *See* DE 92 at pp. 29, 32-33. To the extent Talentscale continues to rehash and bicker with the events of the May 23, 2025 hearing, the proper place to do so is in Talentscale's appeal relating to that hearing that is currently pending in the Eleventh Circuit Court of Appeal.

### C. Contrary to Talentscale's Statements, This Court Ruled (and Talentscale Previously Acknowledged) That Cogent Complied with the February 4, 2025 Subpoena.

Talentscale inaccurately states that Cogent failed to comply with a prior subpoena, necessitating a motion to compel. D.E. 150 at p. 7. This is another misrepresentation of what actually occurred. At the time of Talentscale's first motion to compel (D.E. 82), Cogent had already produced over 1,000 pages of documents to Talentscale, and contended that many of the requests were overbroad and outside the scope of discovery. During the May 23, 2025 hearing, the Court ***agreed with Cogent's objections*** that the discovery sought was overbroad—particularly Talentscale's quest to identify the third parties who might owe Aery for its services—since Cogent had a first-priority security interest in those accounts receivables, which are not available to pay Talentscale. *See* D.E. 92 at pp. 35-46.

Following the hearing, the Court entered an Order (D.E. 84) memorializing its ruling and directed the parties to file a status report on their efforts to resolve the discovery consistent with the limits the Court placed on the scope of discovery. After conferring on the issue and limiting the scope of the subpoena at issue, namely, agreeing that the identities of Aery's payors into the Blocked Account would be redacted, on June 20, 2025, Talentscale and Cogent jointly filed a status report (D.E. 98) informing the Court that the discovery issues have been resolved. The Court thereafter entered an Order (D.E. 100) denying Talentscale's motion to compel.

## CONCLUSION

Talentscale seems to believe there is some "smoking gun" communication between Cogent and Aery showing how Cogent and Aery discussed "how to orchestrate nonpayment [of Talentscale's judgment]" and their "coordinated efforts to obstruct the enforcement of a federal judgment while presenting a false narrative to the Court." D.E. 150 at p. 9. This accusation is absolutely false, completely unsupported, and Talentscale has provided no basis for this assertion whatsoever.[10] The bottom line is that Cogent has continually produced documents—over 6,000 pages of them—and coordinated the deposition of its corporate representative in an attempt to cooperate with Talentscale. In response to the September Subpoenas, Cogent again searched its entire email domain and produced the remaining non-privileged documents that it had in its possession. Enough is enough. Cogent should no longer be forced to spend its time and resources defending against Talentscale's needlessly litigious filings and actions. The Motion to Compel must be denied, and the Court should grant such other relief as may be just and necessary under the circumstances, including, without limitation, an award of Cogent's reasonable

[10] The reality is that Cogent is a Florida state chartered bank with over $2 billion in assets. It engages in specialty lending, residential lending, USDA lending, SBA lending, wealth management, public finance, and business aviation finance, among other things. *See* https://cogentbank.com/cogent-timeline/. Cogent's relationship with Aery is but one of Cogent's lending relationships, and Aery's dispute with Talentscale not a high priority of the bank.

attorneys' fees and costs incurred in responding to this Motion under the Court's inherent authority.

DATED this 12th day of December, 2025.

**<u>Local Rule 7.1(F) Certification</u>**

I hereby certify that the foregoing **Cogent Bank's Response in Opposition to Plaintiff's Motion to Compel Cogent Bank's Compliance with Subpoena** contains 7990 words exclusive of the case style, signature block, and certificate of service.

**GREENBERG TRAURIG, P.A.**

450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909

By: */s/ Courtney M. Keller*
Courtney M. Keller, Esquire
Florida Bar No. 028668
Savannah Young, Esquire
Florida Bar No. 1031408
Email: kellerc@gtlaw.com
youngsa@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com

*Counsel for Cogent Bank*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 12th day of December, 2025, a true and correct copy of the foregoing **Cogent Bank's Response in Opposition to Plaintiff's Motion to Compel Cogent Bank's Compliance with Subpoena** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909

By: */s/ Courtney M. Keller*
Courtney M. Keller, Esquire
Florida Bar No. 028668
Savannah Young, Esquire
Florida Bar No. 1031408
Email: kellerc@gtlaw.com
youngsa@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com
*Counsel for Cogent Bank*