**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**(Panama City Division)**

| | | |
|---|---|---|
| TALENTSCALE, INC. | ) | |
| | ) | |
| Judgment Creditor, | ) | |
| | ) | Case No. 5:25-mc-00001TKW |
| v. | ) | |
| | ) | |
| AERY AVIATION, LLC | ) | |
| | ) | |
| Judgment Debtor. | ) | |
| | ) | |

**DEFENDANT AERY AVIATION, LLC'S**
**RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE**

Now comes the Defendant Aery Aviation, LLC ("Aery"), by counsel, and for its response to this Court's Order to Show Cause (Doc. 165), states as follows:

## PRELIMINARY STATEMENT

Defendant/Judgment-Debtor Aery Aviation, LLC respectfully responds to the Court's Order to Show Cause (Doc. 165) and shows that sanctions are unwarranted. By the Court-ordered deadline of December 3, 2025, Aery served Talentscale with a completed Fact Information Sheet and the required supporting document production via Dropbox. The only deficiency was that the verification/notary page of the Fact Information Sheet was inadvertently left unsigned in the version served on December 3. Once Talentscale raised the issue, Aery acted promptly and in good faith to cure the omission by providing a signed verification by declaration under 28

U.S.C. § 1746. Although a declaration in lieu of an affidavit is expressly permitted by statute, counsel for Talentscale continued to assert his demand that he also receive a signed and notarized Fact Information Sheet, which Aery also provided and served on December 30, 2025. Talentscale has suffered no prejudice from the brief, inadvertent verification issue because Talentscale received the complete substantive responses and supporting documents, and the answers on the Fact Information Sheet did not change between versions. For these reasons, the Court should discharge the Order to Show Cause and decline to impose sanctions.

## FACTUAL BACKGROUND

1. On November 19, 2025, the Court affirmed the magistrate judge's order compelling Aery to complete Florida Form 1.977 and produce the supporting documents, and set a deadline of fourteen (14) days from the date of the Order, *i.e.*, December 3, 2025, for compliance. Doc. 149.

2. On December 3, 2025, Aery's counsel emailed Talentscale's counsel a Dropbox link with "the fact information sheet and the supporting documents." **Exhibit A.** The Dropbox production included folders corresponding to the required categories of attachments, *i.e.*, tax returns, bank statements, cancelled checks, deeds/leases, bills of sale, motor vehicle documents, and financial statements (*see* a screenshot of the Dropbox attached as **Exhibit B**), and also included the completed Fact Information Sheet PDF. **Exhibit C.**

3. The Fact Information Sheet served on December 3 contained substantive, completed answers, including Aery's supportive documents, and the same reported gross/taxable income figures Talentscale later quoted in its motion.[1] Doc. 160 at 4; Ex. C. It also reflected that the required categories of supporting documents were provided. Ex. C.

4. The December 3 Fact Information Sheet was not signed or notarized because the verification page was inadvertently left blank. Ex. C.

5. On December 17, 2025, after Talentscale raised the missing verification, Aery's counsel immediately responded that he would get the verification page to counsel ASAP. Ex. A. On Friday, December 19, 2025, Talentscale demanded execution with a notary stamp by 5:00 p.m. that same day. Ex. A. Aery's counsel responded that there was "no willful violation," and that the Fact Information Sheet had been "submitted . . . to the client for signature" and would be forwarded as soon as counsel received it back. Ex. A.

6. Despite this representation by counsel, on Monday, December 22, 2025, Talentscale nevertheless filed its Motion for Entry of an Order to Show Cause,

[1] Talentscale's reference to Aery's "profits" relies on gross profit figures and improperly treats them as net earnings. As reflected in the Fact Information Sheet and Aery's Forms 1120-S (provided to Talentscale), gross profit excludes operating expenses, depreciation, interest, and taxes, and while Aery reported gross profits in 2022 and 2023, its ordinary business income was $775,174 in 2022 and $3,621,151 in 2023, and it reported a loss of $8,893,490 in 2024.

completely omitting the representation, presenting an image of his request for a signature as being ignored.

7. That same day, Aery thereafter provided a signed verification in the form of a declaration under 28 U.S.C. § 1746 executed by Sean Boyd.[2] The Adobe Acrobat Sign audit report at the end of the Form confirms the verification was sent for signature on December 19, 2025, and the signature process was completed on December 22, 2025. *See* **Exhibit D**. Aery's counsel transmitted the signed version to Talentscale on December 22, 2025. Ex. A.

8. Despite receipt of the signed Form 1.977, Talentscale refused to withdraw its motion, arguing that Aery was required to provide a stamped and notarized affidavit, despite counsel's reference to 28 U.S.C. § 1746, which allows Aery to file a declaration instead.[3] As a result of Talentscale's refusal, this Court issued the present Order to show cause on December 23, 2025, completely unaware that Aery was already in full compliance.

---

[2] The date on the declaration purports to be signed on December 19, 2025, but the date was prefilled since that was the date it was sent out for signature. This fact was not hidden from Talentscale since Aery transmitted the Audit Report for full transparency of when the document was sent and signed.

[3] 28 U.S.C. § 1746 is unequivocal—"[w]herever, under any . . . requirement made pursuant to law, any matter is required . . . to be supported . . . by . . . affidavit, in writing of the person making the same . . ., such matter may, with like force and effect, be supported . . . by the unsworn declaration. . . ."

9. Notwithstanding Aery's compliance, on December 30, 2025, to eliminate any possible dispute regarding the affidavit (which is formatted for a Florida notary although Aery is located in Virginia), Aery served a signed and notarized Fact Information Sheet reflecting execution in Newport News, Virginia on December 29, 2025, with a Virginia notary stamp and seal. **Exhibit E.**

10. The substantive answers on the Fact Information Sheet did not change from the December 3 version to the later signed and notarized versions on December 22 and December 30, respectively.

## STANDARD

Civil contempt and criminal contempt serve distinct purposes and are governed by different remedial frameworks. Civil contempt is remedial and coercive in nature and is intended either to compel compliance with a court order or to compensate a party for losses sustained as a result of noncompliance. *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987). Criminal contempt, by contrast, is punitive and serves to vindicate the authority of the court by punishing past disobedience, rather than to compel future compliance. *Wolfe v. Coleman*, 681 F.2d 1302, 1306 (11th Cir. 1982).

A defining feature of civil contempt is that the contemnor "always has the ability to purge himself of contempt by obeying the court order." *Id*. Civil contempt sanctions therefore must be conditional and avoid becoming punitive, because once

a sanction loses its coercive or compensatory character, it impermissibly resembles criminal contempt. *See Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1530 (11th Cir. 1992) (citing *In re Grand Jury Proceedings (Howald)*, 877 F.2d 849, 850 (11th Cir.1989)).

## ARGUMENT

The Order to Show Cause invokes the Court's civil contempt authority, not criminal contempt, and the analysis must therefore remain tethered to civil contempt's remedial purposes. Civil contempt exists to coerce compliance or compensate for loss, not to punish technical noncompliance for the sake of it once the underlying order has been satisfied, which is the case here.

As shown above, Aery fully complied with the Court's Order by providing two signed Fact Information Sheets: one with a declaration—**which was provided prior to this Court's Order to Show Cause**—and a second with a signed and notarized statement on December 30, 2025. Notwithstanding that Aery was already in substantial compliance by the deadline of December 3, 2025 by providing the completed sheet and all attachments, albeit without a signature, because absolute compliance has now occurred, there is no ongoing conduct to coerce, and no conditional sanction is necessary to compel obedience. To impose sanctions after compliance, absent proof of compensable harm, would transform a civil contempt proceeding into a punitive exercise inconsistent with due process.

As discussed, Aery timely produced the substantive Fact Information Sheet and attachments—**on the original date of compliance**—promptly addressed the inadvertent verification issue once raised, communicated with opposing counsel regarding execution, and ultimately cured the issue in full. Talentscale's focus on a temporary verification defect, without identifying prejudice or loss, does not meet the standard required to support civil contempt. Civil contempt is not designed to penalize imperfect compliance where the responding party acted diligently and transparently and ultimately complied in full as Aery did here.

Once Aery complied, the coercive purpose of civil contempt was fulfilled, and sanctions may be imposed only to compensate Talentscale for proven losses caused by the alleged noncompliance. However, Talentscale has identified no actual loss resulting from the brief delay in verification, and the substantive responses remained unchanged throughout. Rather it only seeks payment of interest accrued from the underlying judgment, which is harm it was already suffering separately from this issue. In the absence of compensable harm, any sanction would serve no remedial function and would only serve as a punitive criminal contempt sanction.

Accordingly, even assuming arguendo that a technical violation briefly existed, it was fully purged prior to the Court's consideration of sanctions, and civil contempt relief is neither necessary nor appropriate.

## CONCLUSION

For the foregoing reasons, Aery respectfully requests that the Court discharge the Order to Show Cause (Doc. 165) and decline to impose sanctions. Aery further requests such other and further relief as the Court deems just and proper.

## Local Rule 7.1(F) Certificate of Word Count

The undersigned certifies that the word count established by Microsoft Word, beginning at the document title through the conclusion of this memorandum and consists of 1578 words.

Dated this 30th day of December, 2025.

**Respectfully submitted,**
**Aery Aviation, LLC**

**By** /s/ *Rachel L. T. Rodriguez*

Rachel L.T. Rodriguez
FL Bar No. 110425
Vires Law Group, PLLC
515 N. Flagler Dr., Suite 350
West Palm Beach, FL 33401
Tel: (561) 370-7383
rrodriguez@vireslaw.group

Erin C. McDaniel (VSB No. 94884)
*PRO HAC VICE*
Davis, Burch & Abrams
555 Belaire Ave, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
erin.mcdaniel@davisba.com
*Counsel for Aery Aviation, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this __ day of December 2025, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Kenneth Chase
Chase Law & Associates, P.A.
1141 71st Street
Miami, FL 33141
kchase@chaselaw.com

_/s/ *Rachel L. T. Rodriguez*_____