**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**(Panama City Division)**

Talentscale, Inc.,

      Plaintiff,

v.                                Case No.: 5:25-mc-00001-TKW

Aery Aviation, LLC

      Defendant.

and

The Cleveland Clinic Foundation,

      Garnishee.

_____/

**MOTION TO DISSOLVE WRIT OF GARNISHMENT**
**ISSUED TO CLEVELAND CLINIC FOUNDATION**

Non-party, Cogent Bank ("Cogent"), pursuant to § 77.16, Fla. Stat., files its

Motion to Dissolve the Writ of Garnishment issued to Cleveland Clinic Foundation

("CCF") on December 23, 2025 (D.E. 168) (the "CCF Writ and states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

This motion involves competing claims over funds owed by CCF to Aery

Aviation, LLC ("Aery"), a judgment debtor of Plaintiff, Talentscale, Inc.

("Talentscale"). While Talentscale seeks to garnish these funds to satisfy its

$1,142,467.20 judgment, as this Court has already recognized, the funds—defined

below as the "CCF Receivables"—are subject to a first-priority, perfected security

interest held by Cogent pursuant to lending agreements between Cogent and Aery. Cogent's security interest was perfected in 2021, well before the issuance of the CCF Writ in December 2025. As detailed herein, Florida law (and this Court) recognize the superiority of Cogent's preexisting lien, rendering the CCF Receivables unavailable for garnishment by Talentscale. The CCF Writ must be dissolved.

## I.     The CCF Writ.

On October 19, 2024, Talentscale was awarded a judgment in the amount of $1,142,467.20 in the United States District Court for the Eastern District of Virginia against Aery. In an effort to collect this judgment, beginning in January 2025, Talentscale served numerous Writs of Garnishment issued by this Court.[1]

On December 22, 2025, Talentscale filed its Judgment Creditor's Motion for Writ of Garnishment to Cleveland Clinic (D.E. 162), and the CCF Writ (D.E. 168) was issued on December 23, 2025. On January 9, 2026, CCF filed an Answer to Writ of Garnishment (D.E. 183) ("CCF Answer"). The CCF Answer stated that CCF was indebted to Aery in the amount of $11,897.00 for invoice numbers 5249 and 5250, and that CCF may also be indebted to Aery in the amount of $34,552.44 for invoice

---

[1] Talentscale has also sought to have several writs of garnishment issued out of the Middle District of Florida (Case No. 6:25-mc-00003) and the Southern District of Florida (Case No. 9:25-mc-80478-AMC). In total, Talentscale has sought the issuance of 61 writs of garnishment between these three district courts in Florida.

numbers 5272 and 5273 (the amounts due and owing from invoices 5249, 5250, 5272, and 5273 are collectively referred to as the "CCF Receivables").

## II.    Cogent's Lending Relationship With Aery.

As set forth in the Affidavit of Cogent Bank ("Affidavit") (D.E. 193), filed simultaneously herewith pursuant to Fla. Stat. § 77.16, Aery is an aviation company that, among other things, provides integrated aerospace solutions for government agencies, hospital systems, and corporate operators. D.E. 193 ¶ 6. On June 23, 2021, Cogent and Aery entered into (a) a Revolving Line of Credit Promissory Note ("Line of Credit") in the original principal amount of $9 million, (b) a Business Loan Agreement, and (c) a Security Agreement. *Id*. ¶ 7, Composite Exhibit 1.  These loan documents have been amended—most recently on May 5, 2025 when Cogent and Aery entered into an amendment that increased the Line of Credit to $18 million. *Id*. ¶s 8, 11; Composite Exhibit 2; Exhs. 3, 4, 5.[2]

Under the Loan Documents, Cogent agreed to loan Aery up to $18 million to

---

[2] The Business Loan Agreement, the Revolving Line of Credit Promissory Note, the Security Agreement, the Blocked Account Agreement, the Second Amendment to Loan Agreement, the Amended and Restated Revolving Line of Credit Promissory Note, the Amended and Restated Security Agreement, the UCC-1 (defined below), the Amended and Restated Business Loan Agreement, the Renewal Revolving Line of Credit Promissory Note, and the Second Amended and Restated Security Agreement are attached to the Affidavit as Exhibits "1", "2", "3", "4", "5", "6", and "7". All of these documents, together with the UCC-1 defined below, are hereinafter referred to collectively as the "Loan Documents."

"[p]rovide ongoing working capital to support Aery's current and future contracts and provide funding for the purchase of new aircraft and equipment." *Id*. ¶ 12, Exh. 3 § 2.01(d).[3] In exchange, Aery pledged to Cogent as security for the loan, a first priority security interest in, among other things, all of Aery's accounts receivables, general intangibles, cash or cash equivalents, contract rights, and all insurance proceeds. *Id*. ¶ 15, Exh. 5 § 1. Cogent perfected this security interest in the collateral by filing a UCC Financing Statement with the Virgina State Corporation Commission on June 24, 2021—over three years before Talentscale obtained its judgment against Aery (and over four years before the CCF Writ was issued). *Id*. ¶s 16, Exh. 6.[4] The UCC-1 describes the Collateral in which Cogent maintains a security interest as follows:

> all of the following, whether now owned or hereinafter acquired: (i) all tangible and intangible personal property; all Equipment (including, without limitation, all motor vehicles); furniture, Fixtures, and Goods; Accounts (including without limitation, ***all accounts receivable*** and all

---

[3] The May 2025 credit increase was made for the sole purpose of providing working capital to support a large incoming government contract of Aery's that would hopefully (and eventually) provide Aery more liquidity to pay its debts. D.E. 193 ¶s 9-12.  The credit increase has a step-down feature where the credit limit was set to decrease by $1 million every month beginning on October 1, 2025 and continuing through June 1, 2026 when the credit line would revert back to the original principal amount of $9 million.  However, the government shut down of October to November 2025 delayed the payments of the contract receivables to the Blocked Account so the step-down period was delayed until January 2026. *Id*. ¶ 13, Exh. 3 at Exhibit "A."

[4] The UCC-1 was filed in Virginia because Aery is a Virginia limited liability company and maintains its principal place of business in Virginia.

Healthcare Insurance Receivables); Inventory (including, without limitation returned or repossessed goods); Chattel Paper (including, without limitation, Tangible Chattel Paper and Electronic Chattel Paper); General Intangibles (including without limitation all Payment Intangibles and Software); Investment Property (including without limitation all Certificated Securities, Uncertificated Securities, Securities Entitlements, Securities Accounts, Securities Certificates, Commodity Contracts, and Commodity Accounts); Documents; Instruments; Deposit Accounts; money, cash or cash equivalents; Supporting Obligations; Letter-of-Credit Rights; Commercial Tort Claims; Contract Rights; Certificates of Deposit; trademarks, patents, and copyrights;…and (iii) all proceeds and products of any of the foregoing including, without limitation, insurance proceeds, refunds, and premium rebates that arise out of any of the foregoing (collectively, the "Collateral") (emphasis added).

On June 23, 2021, in connection with the loan—and long before the accrual of Talentscale's judgment and issuance of the CCF Writ—Cogent and Aery also entered into a Blocked Account Agreement, under which the parties created a "Blocked Account" that is titled in the name of Cogent Bank. *Id*. ¶ 17, Exh. 7 §§ 1-2. The Blocked Account was created solely for the purpose of receiving deposits from Aery's account debtors, third-party payors and other obligors. *Id*. Exh. 7 § 2. Cogent has sole dominion and control of the Blocked Account, and maintains a first priority security interest in the Blocked Account and the receivables that are deposited therein. *Id*. ¶s 17, 20-21, Exh. 7 §§ 1-4.  Aery has no right or ability to control any of the funds in the account.  *Id*. Exh. 7 § 2, 3. Aery's sole and exclusive interest in the funds in the Blocked Account is limited to the amounts remaining in the account at the end of each day in excess of Cogent's security interest (i.e., the

funds remaining after the Line of Credit is fully satisfied). *Id*. Exh. 7 § 2 ("Borrower's sole and exclusive right and interest in and to any funds in the Blocked Account is limited to those amounts in the Blocked Account that are in excess of any and all security interest or other rights that Lender has or may have by virtue of the Loan Agreement or any related Security Agreement to which Lender and Borrower are or may become a party to….Any available funds in the Blocked Account that are in excess of Lender's first and priority interest shall be disbursed to Borrower within twenty-four (24) hours….").

More specifically, under the Amended and Restated Loan Agreement ("Loan Agreement") and the Blocked Account Agreement, Aery is required to direct its counterparties/payors to send all of Aery's accounts receivables to the Blocked Account. *Id*. Exh. 3 § 2.01(f)(ii); Exh. 7 §§ 2, 3. Then, on each business day, Cogent is required under the Blocked Account Agreement to transfer all of the funds in the Blocked Account (except $100) to the Line of Credit to the extent a balance exists thereunder. *Id*. Exh. 7 § 9 ("[O]n each business day (and without requiring [Aery's] further consent) [Cogent] shall deposit on a daily basis all forms of payment…made payable to [Aery] into the Blocked Account, and [Cogent] shall transfer to the Revolving Line of Credit…all funds and amounts on deposit in the Blocked Account…").

As set forth in the Affidavit, as of January 22, 2026, the outstanding principal balance of the credit line is $15,571,634.33 plus interests and fees.[5]

### III.   The CCF Receivables.

CCF—as set forth in the Affidavit—is a medical center providing clinical and hospital care for its patients, and it is one of Aery's customers who has contracted with Aery to fly organ transplants across the United States for the Clinic.  As reflected in the invoices attached to the Affidavit as Composite Exhibit "8", the CCF Receivables are amounts that CCF owes Aery for Aery's transportation of organs on behalf of the Clinic for its patients in need of transplants. D.E. 193 ¶s 5, 24.

The CCF Receivables constitute Aery's "accounts receivable" under the Loan Documents, are encumbered by Cogent's first priority security interest, and are required to be deposited into the Blocked Account at Cogent and thereafter applied to pay down the Line of Credit in accordance with the Blocked Account Agreement. *See id.* ¶s 24-28; Exh. 6; Exh. 3 § 2.01(f)(ii); Exh. 7 §§ 2, 3, 4, 9.

The CCF Receivables thus constitute Cogent's "Collateral" in which Cogent holds a duly perfected first priority security interest under the Loan Documents. Because Cogent has a superior interest in the CCF Receivables, they may not be garnished by Talentscale.  Rather, they should be made available for deposit in the

---

[5] The amount available for Aery to borrow under § 2.01(a) of the Loan Agreement— i.e., its "Borrowing Base"—is less than the maximum amount of the credit line.  D.E. 193 Exh. 3 §§ 1.01, 2.01(a).

Blocked Account pursuant to the Loan Documents, and particularly the Blocked Account Agreement.

## IV.    This Court's Prior Order Dissolving a Writ of Garnishment to CCF.

This Court has also previously ruled on this precise issue. On March 28, 2025, a writ of garnishment was issued to CCF (D.E. 46). CCF initially answered the writ of garnishment on April 24, 2025, and filed an amended answer on May 15, 2025 (D.E. 59, 73). On May 14, 2025, Cogent moved to dissolve the writ of garnishment on the same grounds as Cogent asserts herein—namely, that the Loan Documents provide Cogent with a first priority security interest in the CCF Receivables and such funds are not subject to garnishment by Talentscale. (D.E. 65, 77).

On May 23, 2025, after holding a hearing on Cogent's motion to dissolve, the Court granted the motion to dissolve and dissolved the writ of garnishment issued to CCF because "the money identified in the answer and amended answer to the writ is subject to Cogent Bank's prior secured interest." (D.E. 84).

Talentscale then moved for reconsideration of the Court's order. (D.E. 93). Cogent filed its response to Talentscale's motion for reconsideration on June 30, 2025. (D.E. 105). On July 1, 2025, the Court denied Talentscale's motion for reconsideration, finding that "[n]one of the points raised by Plaintiff in its motion undermine the dispositive (and still-undisputed) fact that the garnished funds were assigned to Cogent Bank as part of a financing arrangement and were subject to a

8

perfected security interest that had priority over Plaintiff's judgment at the time the writ of garnishment was served." (D.E. 106).[6] The same ruling holds true now.

## ARGUMENT AND MEMORANDUM OF LAW

Under Federal Rule of Civil Procedure 69, the procedure in connection with the execution of a judgment "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Thus, Chapter 77 of the Florida Statutes, applies to these garnishment proceedings. *See* Fla. Stat. § 77.01 *et seq.*

Under Florida law, a "request to dissolve [a writ] may be made in either of two ways: (1) on motion of the debtor challenging the truth of the allegations in the creditor's petition for the writ [under § 77.07, Fla. Stat.]"; or "(2) on an affidavit of a third party claiming the garnished property belongs to the third party and not the debtor [under § 77.16, Fla. Stat.]." *State Farm Mut. Auto. Ins. Co. v. Gomez*, No. 22-MC-81945-AMC, 2024 U.S. Dist. LEXIS 230, at *4-5 (S.D. Fla. Jan. 2, 2024); *Cole v. Am. Cap. Partners Ltd.*, No. 06-80525-Civ-Hurley, 2009 U.S. Dist. LEXIS 122839, at *10 (S.D. Fla. Dec. 14, 2009) (the defendant "or 'any other person having an ownership interest in the property' may move to dissolve a writ of garnishment.") (quoting *Rudd v. First Union Nat'l Bank of Florida*, 761 So. 2d 1189, 1191 (Fla. 4th DCA 2000)); *Zuckerman v. Alex Hofrichter, P.A.*, 630 So. 2d 210, 211 (Fla. 3d DCA

---

[6] Talentscale has appealed the May 23, 2025 Order granting Cogent's motion to dissolve and July 1, 2025 Order denying reconsideration. *See* D.E. 112. The appeal remains pending before the Eleventh Circuit Court of Appeals (Case No. 25-12618).

1993) (noting Chapter 77, Florida Statutes provides that a third-party claiming an interest in property subject to a writ of garnishment may move to dissolve the writ.).

If a person other than the garnishee claims an interest in the funds, "such person is required to submit an affidavit to that effect." *Cole*, 2009 U.S. Dist. LEXIS 122839, at *10 (citing Fla. Stat. § 77.16(1)); *see also Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Fla., Inc.*, 788 So. 2d 1013, 1016 (Fla. 2d DCA 2001) (Fla. Stat. § 77.16 "provides that a claimant to funds that may be garnisheed, . . . is required to file an affidavit asserting that a certain amount of the funds in the hands of the garnishee belongs to it. If the parties cannot resolve competing claims to the same funds, a jury must be impaneled to determine those competing rights."). Pursuant to Fla. Stat. § 77.16, Cogent has filed the Affidavit of Cogent Bank [D.E. 193] simultaneously herewith, and such Affidavit further sets forth Cogent's superior interest in the CCF Receivables.

## I.    Cogent's Security Interest in the CCF Receivables Has Priority Over the Lien Established by the CCF Writ.

"It is a basic principle of garnishment law that property which is not actually and in 'good conscience' owned by the debtor may not be secured by a judgment creditor. *Green v. Dep't of Rev. ex rel. Williams*, 78 So. 3d 555, 557 (Fla. 5th DCA 2011) (quoting *Ginsberg v. Goldstein*, 404 So. 2d 1098, 1099 (Fla. 3d DCA 1981)). The "determinative issue" as to ownership of funds is where the "equitable, as opposed to the bare legal, title to the funds resides." *Green v. Dep't of Rev. ex rel.*

*Williams*, 78 So. 3d 555, 557 (Fla. 5th DCA 2011). Indeed, a "creditor can obtain no better right" against a garnishee than the principal debtor had at the time of the garnishment. *Physicians Care Ctrs. of Fla., LLC v. PNC Bank, Nat'l Ass'n*, 345 So. 3d 907, 911-12 (Fla. 4th DCA 2022). In other words, a garnishment lien is subject to the encumbrances that the debtor has agreed to.

And "[t]he basic principle of law with respect to lien priority is first in time, first is right." *Fla. Land Title Co. v. Martinez*, No. 93-1779-CIV-T-17C, 1995 U.S. Dist. LEXIS 12840, at *11, 76 A.F.T.R.2d (RIA) 1995-6462 (M.D. Fla. Aug. 25, 1995). This well-settled law also applies to judgment liens resulting from garnishment actions. *See Miles v. Katz*, 405 So. 2d 750, 751 (Fla. 4th DCA 1981) (holding a charging lien is superior to a judgment lien obtained after commencement of an attorney's services); *H.B. London & Co. v. Wiles*, 695 So. 2d 876, 879 (Fla. 2d DCA 1997) (finding that a third party may have a priority interest in money in a garnished account and that the third party should be given an opportunity to present its claim); *see also Sun Bank, N.A. v. Parkland Design & Dev. Corp.*, 466 So. 2d 1089, 1093 (Fla. 5th DCA 1985) (applying UCC Article 9 priority rules and finding that an *unperfected* assignee of an account is subordinate to a lien creditor and therefore finding that the garnishing judgment creditor had a superior right to the account and that it should have prevailed over an *unperfected* assignment); *see also Stanbro v. McCormick 105, LLC*, 213 So. 3d 925, 927 (Fla. 4th DCA 2017) ("Before

11

a final judgment in garnishment is entered, the trial court should conclusively determine the interests in the funds and the applicable law thereto.").

Here, Cogent perfected its security interest in the CCF Receivables on June 24, 2021 by filing the UCC-1. *See In re: LDB Media, LLC*, 497 B.R. 332, 335 (Bankr. M.D. Fla. 2013) ("Ordinarily, a security interest is perfected by filing a financing statement."); *In re Richert*, 632 B.R. 877, 887 (Bankr. M.D. Fla. 2021) (noting that a bank perfected its security interest in assets, including all accounts receivable, by recording a UCC financing statement); *Aeronautics & Astronautics Serv. V. First Palm Beach Intern. Bank*, 471 So. 2d 188, 189 (Fla. 3d DCA 1985) (bank perfected security interest in accounts receivable that served as collateral for line of credit by virtue of filing a financing statement with the Secretary of State).[7] And the priority of a financing statement is determined by the date it is filed and perfected. *Chase Bank of Florida, N.A. v. Muscarella*, 582 So. 2d 1196, 1197-98 (Fla. 2d DCA 1991);

---

[7] Virginia law (the place where the UCC-1 was filed) accords with Florida law on the perfection of a security interest in accounts receivable. *See Whitmore & Arnold, Inc. v. Lucquet*, 233 Va. 106, 109, (1987) (generally two documents are required to create a perfected security interest in a debtor's collateral, a security agreement and a financing statement); *Oginz v. Craftsman Elec. Mfg.*, 44 Va. Cir. 290, 296 (Cir. Ct. 1998) (finding that a security interest in assets including accounts receivable that was subject to a security agreement and financing statement had priority over a security interest that had a financing statement but no security agreement); *Nat'l Acceptance Co. v. Va. Cap. Bank*, 498 F. Supp. 1078, 1080 (E.D. Va. 1980) (noting that a security agreement relating to, *inter alia*, the debtor's accounts receivable and notes receivable was duly perfected by recording a financing statement); *C. W. Jackson Hauling, Inc. v. S. Eagle*, 12 Va. Cir. 401, 401-03 (Cir. Ct. 1988).

*Suburbia Fed. Savings & Loan Assoc. v. Bel-Air Conditioning Co., Inc.*, 385 So. 2d 1151 (Fla. 4th DCA 1980).

Conversely, service of a writ of garnishment does not create a lien on property garnished until "the time of service [of the writ of garnishment] or at the time such debts or property come into the garnishee's possession or control." Fla. Stat. § 77.06(1); *see also Tempur-Pedic N. Am. v. Sos Furniture Co.*, No. 20-MC-22441-KMM/LOUIS, 2021 U.S. Dist. LEXIS 44422, at *9 (S.D. Fla. Mar. 8, 2021). Here, there is no indication in the record when the CCF Writ was served on CCF, but it must have been sometime after it was issued on December 23, 2025. Accordingly, Talentscale's lien on the CCF Receivables did not attach until the earliest of December 23, 2025—***nearly four years after Cogent's lien was perfected***.

Accordingly, Cogent has a valid first-priority lien on the CCF Receivables which lien was perfected before service of the CCF Writ. *See United States v. Gammage*, 598 F. App'x 896, 897 (11th Cir. 2015) (noting that a judgment obtained in a third party's favor, a prior recorded security interest, or a prior garnishment would establish grounds for exempting garnished funds); *Wiles*, 695 So. 2d at 879 (due process was violated where a party was not permitted to present evidence of its interest in garnished funds when the party had asserted a sufficient interest in the funds and the party may have proved a priority security interest); *Sun Bank, N.A. v. Acme Pumps & Wellpoints, Inc.*, No. 90-0184-CIV-ORL-18, 1991 WL 182177, at

13

*2-*4 (M.D. Fla. Aug. 13, 1991) (finding that a federal tax lien takes priority over all judgment liens that were perfected after the date of perfecting the tax lien, thus the federal tax lien took priority over the writs of garnishment and the United States was entitled to the funds seeking to be garnished); *In re Monroe Cnty. Hous. Corp., Inc.*, 29 B.R. 686, 688 (Bankr. S.D. Fla. 1983) (third party claimed that its interest in the funds was superior to any lien arising from the writs of garnishment, but the financing statement was filed one day after the writs were served so the third party's claim was thus subordinate). As such, the CCF Receivables may not be garnished until the balance owed to Cogent under the Loan Documents is paid in full and Cogent's security interest extinguished.

## II.    Cogent's Security Interest Has Priority Regardless of Whether There is A Default Under the Loan Documents.

Talentscale has argued before—to no avail—that there must be a default under the Loan Documents before Cogent's security interest is effective.  This position is mistaken.  Cogent's interest in the funds in the Blocked Account is not solely for setting off defaulted debts.

The structure of the agreement between Cogent and Aery *requires* Cogent to apply Aery's incoming accounts receivable to pay down the Line of Credit *in absence of any default*. Indeed, such accounts receivable are paid into the Blocked Account, in which Cogent is the only signatory and thus maintains exclusive control over the funds in the Blocked Account. To be sure, the Blocked Account Agreement

14

provides in pertinent part:

> Borrower hereby agrees and confirms that (a) it has no right or ability to direct the documents, amounts, funds, cash or payments held at any time in the Blocked Account, (b) Lender has exclusive dominion and control over the Blocked Account and all funds or amounts in the Blocked accounts in all respects, and (c) it has no dominion or control whatsoever over the Blocked Account or any funds or amounts in the Blocked Account, and Borrower hereby disclaims any and all rights of any nature whatsoever to control or otherwise direct or make any claim against the funds, cash or other amounts in the Blocked Account at any time. *See* D.E. 193 Exh 7 § 2.

Then, under the clear terms of the Loan Documents, on a daily basis, Cogent is to transfer all available funds deposited into the Blocked Account to the Line of Credit in order to pay down the credit line, and all payments into the Blocked Account are held for the benefit of Cogent, and subject to Cogent's first priority lien. *See id*. Exh. 3 § 2.01(f); Exh. 6; Exh. 7 §§ 1-4, 9

Where, as here, the loan documents provide that the creditor may pay its debtor's debts using the debtor's account balances in absence of any default, such loan documents control and are enforceable. *In re MCB Fin. Grp., Inc.*, 461 B.R. 914, 919 (Bankr. N.D. Ga. 2011) ("under Florida law the parties to a note can agree to grant a lender the right to setoff against a debt that is not mature."); *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1367 (S.D. Fla. 2003) ("Under Florida law, when an individual owes a debt to a bank in the form of an outstanding loan or a negative balance, or overdraft, in a bank account, the bank has a common-law right to transfer funds from another account owned by the same bank customer to

15

satisfy the outstanding debt…he bank may also set forth its right to offset funds in the account agreement, which is a contract signed by the bank customer."); *see also Credit All. Corp. v. Nat'l Bank of Georgia, N.A.*, 718 F. Supp. 954, 957 (N.D. Ga. 1989) (parties may contract to subject unmatured debts to a bank's right of setoff).

## III.    Cogent's Post-Lien Advances Also Have Priority.

Moreover, under well-settled law, Cogent's advances under the Line of Credit are entitled to priority because Cogent's commitment to advance the funds—i.e., the Loan Agreement and Line of Credit—was made prior to Talentscale's garnishment lien.

Under § 679.323(2), Fla. Stat., a security interest is subordinate to the rights of a person who becomes a lien creditor (like Talentscale) to the extent that the security interest secures an advance more than 45 days after the person becomes a lien creditor unless the advance is made pursuant "to a commitment entered into without knowledge of the lien." An advance is made pursuant to a commitment where the secured party is "bound" to make it. *Dick Warner Cargo Handling Corp. v. Aetna Bus. Credit, Inc.*, 700 F.2d 858, 862 (2d Cir. 1983).

There can be no dispute that the $15 million credit facility under the Loan Documents was entered into on September 24, 2021, and the commitment increasing the advancements thereunder by $3 million (to $18 million) was entered into on May 5, 2025, both of which were well before Talentscale's garnishment lien on the CCF Receivables was created on December 23, 2025. The Loan Documents were thus

entered into without knowledge of Talentscale's lien on the CCF Receivables (because

such lien was not in existence on either September 24, 2021 or May 5, 2025). And the

Loan Agreement and the Line of Credit, no doubt, constitute a "commitment" under

Section 679.323(2). The Loan Agreement provides:

> (a) *Line of Credit*. Subject to the terms and conditions of this Agreement, Bank ***agrees to make available to Borrower*** a revolving line of credit (the "Line of Credit"). During the Term, Borrower may borrow, re-pay and re-borrow on a revolving basis advances (each an "Advance" and collectively, "Advances") in the aggregate outstanding at any one time or from time to time, the lesser of (i) the maximum principal sum of the Line of credit Commitment or (ii) the Borrowing Base…
>
> ***
>
> (c) *Procedure for Advances*.
>
> (i) Advances made for Billed Federal Government Receivables, Unbilled Federal Government Receivables, and Net Eligible Commercial Accounts will be made under the Line of Credit ***automatically*** pursuant to the Master Treasury Agreement entered into or to be entered into between the Borrower and Bank.

*See* D.E. 193 Exh. 3 § 2.01(a), (c).

Because Cogent was obligated to make the advances under the plain terms of the

Loan Agreement, such advances are thus superior to Talentscale's judgment lien on the

CCF Receivables.[8]

---

[8] Moreover, Aery's balance under the Line of Credit has always exceeded the balance of Talentscale's judgment.

**IV.    The Court May Determine Priority Without a Jury Trial.**

Finally, Talentscale has requested a jury trial on CCF's Answer.  *See* D.E. 174. But a jury trial is not required to resolve this Motion and supporting affidavit under § 77.16. Indeed, the garnishment statute is still subject to "all other rules applicable to the determination of claims," and if warranted by the facts, the rights to garnished property may be resolved by a "summary ruling." *Tortuga Marine Salvage Co. v. Hartford Acci. & Indem. Co.*, 171 So. 2d 54, 55 (Fla. 3d DCA 1965); *Oper v. Air Control Prods., Inc.*, 174 So. 2d 561, 564 (Fla. 3d DCA 1965). *See also Tempur-Pedic N. Am. v. Sos Furniture Co.*, No. 20-MC-22441-KMM/LOUIS, 2021 U.S. Dist. LEXIS 44422, at *8-*9 (S.D. Fla. Mar. 8, 2021) (if there is no genuine issue of material fact "a trial is not necessary: to determine the rights of plaintiff and claimant under § 77.16); *Highland Consulting Grp., Inc. v. Soule*, No. 9:19-cv-81636-RLR, 2022 U.S. Dist. LEXIS 221566, at *19-20 (S.D. Fla. Dec. 7, 2022) (citing  *Physicians Care Centers of Florida, LLC v. PNC Bank, Nat'l Ass'n*, 345 So. 3d 907, 911 (Fla. 4th DCA 2022)) ("Claimant asserts that it is procedurally improper to resolve this dispute on a motion for summary judgment. He argues that he is entitled to a jury trial once he files an affidavit as required by Florida Statute § 77.16. He is wrong. If there are no genuinely disputed material facts, the Court can resolve ownership of garnished assets as a matter of law.").

Here, the priority of Cogent's security interest can be resolved as a matter of law, and there being no genuine dispute of material fact—because the undisputed Loan Documents resolved the issue of priority—this Court may properly determine the rights to the CCF Receivables without a jury trial.

## CONCLUSION

For the foregoing reasons, Cogent respectfully requests the Court enter an Order recognizing Cogent's superior interest in the CCF Receivables, dissolving the CCF Writ, and granting any other or additional relief that the Court deems just and proper.

## Local Rule 7.1(B) Conference

I hereby certify that on January 27, 2026 undersigned counsel attempted to confer with Talentscale's counsel as to Talentscale's position on this Motion, but as of the time of filing this Motion, undersigned counsel has not received a response. Indeed, rather than responding to undersigned counsel's inquiry, Talentscale quickly filed its Motion for Final Judgment of Garnishment Against Cleveland Clinic [DE 194], which seeks relief that is diametrically opposed to the relief requested in this Motion. Undersigned counsel will continue its attempts to confer and will update this Certificate as appropriate.

## Local Rule 7.1(F) Certification

I hereby certify that the foregoing **Motion to Dissolve Writ of Garnishment Issued to Cleveland Clinic Foundation** contains 4,317 words exclusive of the case style, signature block, and certificate of service.

DATED this 28th day of January, 2026.

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone:  (407) 420-1000
Facsimile:(407) 420-5909

By: */s/ Courtney M. Keller*
    Courtney M. Keller, Esquire
    Florida Bar No. 028668
    Savannah Young, Esquire
    Florida Bar No. 1031408
    Email: kellerc@gtlaw.com
           youngsa@gtlaw.com
           nef-iws@gtlaw.com
           FLService@gtlaw.com

*Counsel for Cogent Bank*

21

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this January 28, 2026, a true and correct copy of the foregoing **Motion to Dissolve Writ of Garnishment Issued to Cleveland Clinic Foundation** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone:  (407) 420-1000
Facsimile:(407) 420-5909

By: */s/ Courtney M. Keller*
   Courtney M. Keller, Esquire
   Florida Bar No. 028668
   Savannah Young, Esquire
   Florida Bar No. 1031408
   Email: kellerc@gtlaw.com
        youngsa@gtlaw.com
        nef-iws@gtlaw.com
        FLService@gtlaw.com
*Counsel for Cogent Bank*

22