**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| TALENTSCALE, INC. | ) | |
| | ) | |
| Judgment Creditor, | ) | |
| | ) | Case No. 5:25-mc-00001-TKW-MJF |
| v. | ) | |
| | ) | |
| AERY AVIATION, LLC | ) | |
| | ) | |
| Judgment Debtor | ) | |
| | ) | |

**AERY AVIATION LLC'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO DISSOLVE WRIT OF GARNISHMENT**

COMES NOW the Judgment Debtor, Aery Aviation, LLC ("**Aery**"), by counsel, and for its Memorandum in Support of its Motion to dissolve the Writ of Garnishment to Cleveland Clinic filed by Talentscale, Inc. ("**Talentscale**"), states as follows:

**PRELIMINARY STATEMENT**

This is Talentscale's second attempt to garnish the same Cleveland Clinic receivables despite this Court having already resolved the issue. In May 2025, Talentscale sought to garnish Cleveland Clinic funds owed to Aery Aviation, LLC, and the Court dissolved the writ after determining that the receivables were subject to a first-priority, perfected security interest held by Cogent Bank and, therefore, not available for garnishment. Nothing has changed since that ruling. The governing loan documents remain in effect, Cogent's security interest remains perfected and senior, and the Cleveland Clinic receivables remain contractually required to be paid into Cogent's blocked account and applied against Aery's outstanding indebtedness. Talentscale does not identify any new facts, intervening change in law, or defect in the Court's prior reasoning. Cogent Bank's updated affidavit (DCF Doc. No. 193) and loan documentation filed in connection with this writ

1

confirm the undisputed facts on which the Court previously relied in dissolving the Cleveland Clinic writ.

Because the Court has already determined that these receivables are not subject to garnishment—and because Talentscale cannot relitigate that determination by repetition—the writ should be dissolved again.

### FACTS

1. Aery is a limited liability company organized and located in the Commonwealth of Virginia. *See* Dec. of Sean Boyd ¶ 2, attached as **Exhibit A**.

2. Plaintiff Talentscale is a judgment creditor of Aery Aviation pursuant to a judgment obtained in the United States District Court for the Eastern District of Virginia on October 9, 2024 in the amount of $1,142,467.20 plus post judgment interest at the statutory rate (the "**Judgment**").

3. The Judgment was domesticated in the Northern District of Florida on January 13, 2025. DCF Doc. No. 2.

4. On December 23, 2025, pursuant to Plaintiff's Motion for a Writ of Garnishment (DCF Doc. No. 168), this Court issued a Writ of Garnishment to the Cleveland Clinic Foundation ("**CCF**") (the "**Writ**").

5. CCF is a nonprofit medical center based in Cleveland Ohio. Aery is contracted to provide Critical Care Transport Services to the Cleveland Clinic on an as-needed basis. This involves transporting critically ill and injured patients along with medical providers and advanced medical equipment, such as full mechanical ventilation, diagnostic imaging equipment, and ventricular assist devices using fixed-wing aircraft. Ex. A, ¶ 9.

6. Aery issues regular invoices to CCF for these services. However, instead of paying Aery directly, Aery has directed CCF to pay invoices, including the invoices CCF has identified in

its Answer to the Writ (DCF Doc. No. 183), directly into an account held by a third party, Cogent Bank. Ex. A, ¶ 10.

7.    Aery has a longstanding lending relationship with Cogent Bank. In connection with that relationship, Aery and Cogent entered into a Business Loan Agreement, a Revolving Line of Credit Promissory Note, a Security Agreement, a Blocked Account Agreement, and related amendments, that granted Cogent Bank a first priority security interest in its accounts receivable and related collateral. ("Loan Documents"). The Loan Documents were effective on June 23, 2021. Ex. A, ¶ 3.

8.    Cogent Bank perfected its interest by filing a UCC-1 Financing Statement with the Virginia State Corporation Commission on June 24, 2021. Ex. A, ¶ 7.

9.    Upon the filing of the UCC-1, Cogent immediately began lending money to Aery pursuant to the Security Agreement. Ex. A, ¶ 8.

10.    The funds that CCF pays into Cogent Bank's account are directly applied towards Aery's debt obligations under the Security Agreement. Ex. A, ¶ 11.

11.    Under the governing loan documents, those payments are swept automatically and applied daily to reduce Aery's outstanding obligations to Cogent Bank regardless of whether any default has occurred. Aery has no dominion or control over those funds at any point prior to Cogent's application of the payments. Ex. A, ¶¶ 11-12.

12.    As a result, Cleveland Clinic receivables are encumbered by Cogent Bank's security interest at inception and never become unencumbered assets of Aery. Ex. A, ¶ 14.

13.    On March 28, 2025, Talentscale obtained a writ of garnishment directed to the Cleveland Clinic Foundation seeking to garnish receivables owed to Aery Aviation, LLC. DCF Doc. No. 46.

14.     In response, Aery Aviation and non-party Cogent Bank moved to dissolve the writ, explaining that the Cleveland Clinic receivables constituted "accounts receivable" subject to Cogent Bank's first-priority, perfected security interest and were required to be deposited into Cogent's blocked account pursuant to the governing loan documents. DCF Doc. Nos. 65, 68, and 77.

15.     After briefing and oral argument, the Court dissolved the writ, concluding that the Cleveland Clinic receivables were encumbered by Cogent Bank's senior security interest and were not available for garnishment by Talentscale. DCF Doc. No. 84.

16.     Further, on July 1, 2025, the Court denied Talentscale's Motion to Reconsider its decision stating that Talentscale presented no arguments or allegations that "undermine the dispositive (and still-undisputed) fact that the garnished funds were assigned to Cogent Bank as part of a financing arrangement and were subject to a perfected security interest that had priority over [Talentscale's] judgment." DCF Doc No. 106.

17.     Notwithstanding the Court's prior orders, Talentscale caused a new writ of garnishment to issue to the Cleveland Clinic seeking to garnish the same category of receivables under the same operative facts as the previous writ. DCF Doc. No. 168.

18.     On January 9, 2026, CCF filed its Answer to the Writ of Garnishment. In its Answer, CCF stated that it is holding $11,897.00 owed to Aery for services rendered pursuant to specific invoices. CCF further indicated that it would continue holding these funds pending the Court's direction and was not aware of other debts or property belonging to Aery in its possession. DCF Doc. No. 183.

4

19. In its Answer, CCF also stated that it may owe an additional $34,552.44 for other additional specified invoices, but they have not validated the invoices yet. DCF Doc. No. 183.[1]

20. But for the issuance of the Writ, the $11,897.00 and the $34,552.44, if validated, currently held by CCF pursuant to its Answer would have been remitted to the designated deposit account for the benefit of Cogent Bank, as required under the Loan Documents. Ex. A, ¶ 15.

21. As of January 22, 2026, Aery was indebted to Cogent Bank in the principal amount of approximately $15,571,634.33, exclusive of interest and fees. This indebtedness arises entirely from loans subject to Cogent's perfected security interest reflected in the UCC-1 and remains outstanding. Ex. A, ¶ 14.

**STANDARD**

22. Florida Statutes Chapter 77 governs post-judgment garnishment in Florida. Fla. Stat. § 77.01 authorizes a judgment creditor to obtain a writ of garnishment to recover debts owed to the judgment debtor by a third party. However, if any allegation in plaintiff's motion for writ is untrue, the defendant may move to dissolve the garnishment. Fla. Stat. § 77.07 (2).

23. Both Florida and Virginia have adopted Article 9 of the Uniform Commercial Code ("UCC"), which governs the creation, perfection, and priority of security interests in personal property, including accounts receivable. Va. Code § 8.9A-101, *et seq*; *cf.* Fl Stat. § 679.3011, *et seq.*

---

[1] Notably, Talentscale has filed a Motion for Final Judgment of Garnishment against Cleveland Clinic and has represented to this Court that "no parties have filed a motion to dissolve," *see* DCF Doc. No. 194, yet Talentscale has not followed the proper procedure to even trigger a motion to dissolve because it never served or filed a certificate of service reflecting that Cleveland Clinic filed an answer. *See* Fl. Stat. §77.055 ("Within 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired, the plaintiff shall serve, by mail, the following documents: a copy of the garnishee's answer, and a notice advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice if any allegation in the plaintiff's motion for writ of garnishment is untrue.")

24. According to Article 9, as codified in both Virginia and Florida, the law of the state where the debtor is located governs the effect of perfection and priority of security interests. *See* Va. Code §8.9A-301(1); *cf.* Fl Stat. § 679.3011.

25. Relevant here, an "Account" under Article 9 is defined as, among other things, "a right to payment of a monetary obligation . . . for services rendered . . . . Va. Code § 8.9A-102(a)(1). A security interest in an account attaches and becomes enforceable when (i) value has been given, (ii) the debtor has rights in the collateral, and (iii) the debtor has authenticated a security agreement that describes the collateral. Va. Code § 8.9A-203(b). The security interest is perfected by filing a UCC-1 financing statement. Va. Code § 8.9A-310. The filing must include the debtor's name, secured party's name, and a collateral description. Va. Code § 8.9A-502(a)(1)–(3).

26. By contrast, a garnishing judgment creditor qualifies as a "lien creditor" under the UCC, and its rights attach only at the time of service of the writ. Va. Code § 8.9A-102(a)(52); Fla. Stat. § 77.06(1) ("Service of the writ creates a lien in or upon any such debts or property at the time of service or at the time such debts or property come into the garnishee's possession or control.").

27. The priority of a perfected security interest is determined by the date of filing. Va. Code § 8.9A-322(a)(1).

28. Further, a perfected security interest securing future advances made pursuant to a preexisting lending commitment has priority over the rights of a later-arising lien creditor, even as to advances or receivables arising after the lien attaches. Va. Code § 8.9A-323(b); Fla. Stat. § 679.323(2). A "commitment" exists where the secured party is contractually bound to make advances under the loan agreement, rather than exercising mere discretion, and advances made

pursuant to such a commitment relate back in priority to the original perfection date. *See* Va. Code § 8.9A-323 cmt. 3; Fla. Stat. § 679.323 cmt. 3. Where the commitment was entered into before the judgment creditor became a lien creditor, the secured party's priority is preserved notwithstanding the timing of later invoices, payments, or advances. *See* Va. Code § 8.9A-323(b); Fla. Stat. § 679.323(2).

## ARGUMENT

29.    This Court has already resolved the dispositive issue presented by this writ, namely, whether Cleveland Clinic receivables subject to Cogent Bank's perfected security interest may be garnished by Talentscale. After full briefing and oral argument, the Court dissolved the prior Cleveland Clinic writ and denied reconsideration, holding that the receivables were assigned to Cogent and encumbered by a senior perfected lien. DCF Docs. No.84 and 106. No intervening facts or change in law warrant a different result here.

30.    In Talentscale's Motion for Writ it states that "Cleveland Clinic has collectible assets or funds in its possession." DCF Doc. No. 162. However, as will be discussed below, that statement is untrue.

31.    Pursuant to both the Security Agreement and the UCC-1 filing, Cogent Bank has held a perfected, first-priority security interest in Aery's accounts receivable, including those at issue in this garnishment proceeding, since June 24, 2021. Ex. C. From that date forward, Cogent's rights to the collateral—including payments from CCF—have been enforceable and superior to the claims of later-arising lien creditors.

32.     Talentscale, a judgment creditor, became a lien creditor only upon service of its writ of garnishment on December 23, 2025. By then, Cogent's security interest had been perfected for over four years. Talentscale's garnishment lien, which arose well after Cogent's filing, is therefore subordinate.

33.     Further, Cogent Bank's priority is not defeated by the timing of individual Cleveland Clinic invoices or the date on which those receivables came into existence. Cogent's security interest secures advances made pursuant to a revolving credit facility and lending commitment entered into years before Talentscale became a lien creditor, and that commitment obligates Cogent to advance funds based on Aery's receivables. Because Cogent's lending commitment predated service of the writ, the identified Cleveland Clinic receivables remain subject to Cogent's senior perfected lien as a matter of law. *See* Fla. Stat. § 679.323 cmt. 3; Va. Code § 8.9A-323 cmt. 3. Talentscale therefore cannot obtain priority over Cogent by pointing to the post-writ issuance, validation, or payment of Cleveland Clinic invoices.

34.     The funds currently held by CCF, $11,897.00 and the not yet validated $34,552.44, fall squarely within the scope of Cogent Bank's collateral. The UCC-1 filed by Cogent covers "all Accounts (including without limitation, all accounts receivable and all Healthcare Insurance Receivables)," and "all proceeds thereof." *See* Ex. C. The payments from CCF represent invoiced services rendered by Aery and are precisely the type of accounts receivable contemplated in the collateral description.

35.     As of January 22, 2026, Aery was indebted to Cogent Bank in an amount exceeding $15 million. *See* Ex. A at ¶ 13. Because the amount of Aery's debt far exceeds the $11,897.00 and $34,552.44 at issue, Cogent's interest entirely absorbs the receivable held by CCF.

36.     In short, Talentscale is once again attempting to garnish funds that are not subject to Aery's unencumbered interest. The receivable in question is wholly pledged to Cogent Bank, perfected years in advance of Talentscale's lien, and continues to secure an outstanding multi-million-dollar debt. Under well-settled UCC principles, Talentscale cannot garnish what Aery no longer owns free and clear, and Talentscale knows this.

37.     Talentscale has no right to encumber what belongs to a third-party, and in attempting to do so, Talentscale is causing undue injury to an innocent third-party creditor and causing injury to the relationships between Aery, CCF and Cogent.

38.     Finally, without commenting on Talentscale's claim that it has a right to a jury trial on this issue with respect to third parties, in no event would it have a right to a jury trial to resolve Aery's Motion. *See* Fl. Stat. §77.16 ("If any person ***other than defendant*** claims that the debt due by a garnishee is due to that person and not to defendant . . . the court shall impanel a jury . . . ."). Talentscale has not, and cannot, point to any other authority entitling it to a jury trial on a motion filed by the Defendant. Therefore, the Court should dispose of this motion without a jury, as it has previously.

WHEREFORE, Judgment Debtor, Aery Aviation, respectfully requests this Honorable Court to dissolve the Writ of Garnishment issued to Cleveland Clinic and grant such other relief as the Court deems just and proper.


**Local Rule 7.1(B) and (C) Statement on Conferral**

The undersigned certifies that, pursuant to Local Rule 7.1(B) and (C), co-counsel for Aery conferred with Ken Chase, counsel for Judgment Creditor, Talentscale, Inc., regarding its this motion. Mr. Chase has not indicated whether Talentscale opposes this motion.

**Local Rule 7.1(F) Certificate of Word Count**

The undersigned certifies that the word count established by Microsoft Word, beginning at the document title through the conclusion of this memorandum and consists of 2471 words, which does not exceed the 8,000 word limit.

Dated this 29th day of January, 2026.

**Respectfully submitted,**
**Aery Aviation, LLC**

**By** _/s/ Rachel Rodriguez_____

Rachel L.T. Rodriguez
FL Bar No. 110425
Vires Law Group, PLLC
515 N. Flagler Dr., Suite 350
West Palm Beach, FL 33401
Tel: (561) 370-7383
rrodriguez@vireslaw.group

Erin C. McDaniel (VSB No. 94884)
-   *NDFL Admission sought*
Davis, Burch & Abrams
555 Belaire Ave, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
erin.mcdaniel@davisba.com

*Counsel for Aery Aviation, LLC*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2026, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Eric J. Pons
Chase Law & Associates PA
951 Yamato Road
Suite 280
Boca Raton, FL 33431
epons@chaselaw.com

Kenneth Chase
Chase Law & Associates, P.A.
1141 71st Street
Miami, FL 33141
kchase@chaselaw.com

_/s/ *Rachel Rodriguez*_____