## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

Case No. 5:25-mc-00001-TKW-MJF

TALENTSCALE INC.,

     Plaintiff / Judgment-Creditor,

v.

AERY AVIATION LLC,

     Defendant / Judgment-Debtor.

and

CLEVELAND CLINIC FOUNDATION,

     Garnishee.

_____/

## TALENTSCALE INC'S OPPOSITION
## TO AERY AVIATION LLC'S MOTION TO DISSOLVE
## WRIT OF GARNISHMENT TO CLEVELAND CLINIC FOUNDATION

Plaintiff/Judgment-Creditor Talentscale, Inc. ("Talentscale") files this Opposition to the Motion to Dissolve the Writ of Garnishment issued to Cleveland Clinic Foundation ("Cleveland Clinic") filed by Defendant/Judgment-Debtor Aery Aviation LLC ("Aery").

## **INTRODUCTION**

Aery states that as of January 22, 2026, it is indebted to Cogent in the principal amount of approximately $15.57 million, under a revolving credit facility with a stated limit of $18 million. With a credit limit of $18 million, Aery is sitting on

approximately $2.43 million of unused borrowing capacity, enough to pay the Talentscale judgment in full twice while still remaining within its bargain with Cogent. Aery's refusal to use that available liquidity to satisfy a past due trade judgment, while asking this Court to dissolve a properly issued writ, is precisely the circumstance post judgment garnishment is designed to address.

The resources of all other parties to these proceedings, and of the Court, are being inappropriately taxed because of Aery's baseless refusal to pay a judgment for trade debt dating back to 2021, a relationship that predates Aery's relationship with the lenders whose own contracts require Aery to pay such obligations when due.

## ARGUMENT

### I. Section 77.07's Narrow Predicate is Not Met.

Section 77.07(2), Florida Statutes, allows "the defendant and any other person having an ownership interest in the property" to move to dissolve a writ of garnishment by "stating that any allegation in plaintiff's motion for writ is untrue." But is there any untrue allegation in the motion for writ (Doc. 162)?

The only statement in that motion which Aery purports to challenge is where Aery contends that Talentscale "states that 'Cleveland Clinic has collectible assets or funds in its possession.'" Doc. 200-1, ¶ 30. But that is not what Talentscale alleged. The actual allegation is that "Judgment Creditor believes the Cleveland Clinic has collectible assets or funds in its possession within the jurisdiction of the

2

United States District Court for the Northern District of Florida." Doc. 162, ¶ 5. Talentscale's statement of its belief is both accurate as phrased and amply supported by the record.

Cleveland Clinic's confirms the correctness of Talentscale's statement in its Answer, as it unambiguously states that it "is indebted to the Defendant, Aery Aviation, LLC, for services rendered in the amount of $11,897.00 for invoice numbers 5249 and 5250" and that it "may also be indebted to the Defendant, Aery Aviation, LLC, for services rendered in the approximate amount of $34,552.44" on additional invoices. Doc. 183, ¶¶ 1–2. But for the writ, Cleveland Clinic would remit those amounts in the ordinary course regardless of the name of the depository account where the funds are received. Aery confirms that it "issues regular invoices" to Cleveland Clinic for Aery's services. Doc. 200-1, ¶ 6. On this record, Talentscale's belief that Cleveland Clinic has collectible funds owing to Aery within the Court's jurisdiction is not whatsoever "untrue" under any reasonable reading of § 77.07(2). Because Aery has not identified a single untrue allegation in Talentscale's motion, Section 77.07(2) is not satisfied, and Aery's motion must be denied on that basis alone.

## II.  Aery Cannot Simultaneously Disclaim Ownership and Invoke § 77.07.

Section 77.07(2) authorizes motions to dissolve by "the defendant and any other person having an ownership interest in the property." Aery represents that

under its loan documents with Cogent, the Cleveland Clinic receivables are paid into a Cogent controlled blocked account and that Aery has "no dominion or control" over those funds. Doc. 200-1, ¶ 11. Aery does not explain the relevance of the "dominion or control" phrasing. Aery further asserts that the Cleveland Clinic receivables are "encumbered" by Cogent's security interest and "never become unencumbered property of Aery." Doc. 200-1, ¶ 12; see also Doc. 200-2, ¶ 14. Those are the words of a debtor whose property is subject to a lien, not of a party disclaiming the receivables altogether or shifting ownership to someone else.

If, as Aery insists, the receivables "never" become Aery's unencumbered property and are beyond Aery's dominion and control, then Aery cannot simultaneously claim to hold an "ownership interest" sufficient to invoke § 77.07(2). Conversely, if Aery does own the receivables (as Cleveland Clinic Answer and Cogent's own characterizations elsewhere confirm), then Aery's assertion that Talentscale's allegation was "untrue" collapses. Either way, the statute does not support dissolution and the motion must be denied.

In Talentscale's Omnibus Memorandum (Doc. 209), Talentscale demonstrated that Cogent consistently describes the Cleveland Clinic receivables as "Aery's accounts receivable," those receivables are Cogent's collateral, not Cogent's own property, and Cleveland Clinic's Answer likewise refers to Cleveland Clinic as being indebted to Aery, not to Cogent. Doc. 209 at 2-6; Doc. 183, ¶ 1. The

4

garnished property is Aery's receivable, subject to Cogent's garden variety security interest, and therefore properly within the reach of a writ directed to Cleveland Clinic.

**III. The Law of the Case Does Not Compel Dissolution of This Writ.**

First, § 77.07(2) does not ask whether the Court previously dissolved a similar writ under a different record. It asks whether "any allegation in plaintiff's motion for writ is untrue." For this writ, the only challenged allegation is Talentscale's statement of its belief that Cleveland Clinic holds collectible funds. Doc. 162, ¶ 5. As shown above, Cleveland Clinic's Answer confirms that Cleveland Clinic "is indebted to" Aery on specific invoices and is holding those funds. Doc. 183, ¶¶ 1–3. That is sufficient to defeat dissolution under the statute.

Second, Talentscale's Omnibus Memorandum sets forth material developments and clarifications in the factual record since the May 2025 hearing, including (1) the May 5, 2025 increase of the credit facility from $15 million to $18 million, which was patently known to both Cogent and Aery but concealed from the Court by the attorneys for Cogent and Aery at the May 23, 2025 hearing, (2) millions of discretionary, post lien advances Cogent extended despite Talentscale's existing garnishment, and (3) the ongoing decision by Cogent not to declare a default or exercise Article 9 remedies while continuing to reap significant fees and interest. See Doc. 209 at 2-4, 6-7, 21-25. Those developments, and the authority discussed at

length in Doc. 209, confirm that Cogent's security interest quacks like a duck. It is a garden variety security interest, and that Cogent's and Aery's choices about how to administer that facility do not render Talentscale's writ allegations "untrue" within the meaning of § 77.07(2). Thus, no predicate has been established which could support the dissolution of the writ.

## IV.  Talentscale Incorporates its Omnibus Memorandum at Doc. 209.

Talentscale incorporates by reference the points and authorities set forth in its Omnibus Memorandum at Doc. 209, including, without limitation:

- The distinction under Florida law and Article 9 between a security interest in a receivable (collateral) and ownership of the receivable.

- The requirement, under *American Home Assurance Co. v. Weaver Aggregate Transport, Inc.,* 84 F. Supp. 3d 1314 (M.D. Fla. 2015) and *Frierson v. United Farm Agency, Inc*., 868 F.2d 302 (8th Cir. 1989), that a secured creditor cannot refuse to declare a default, continue to profit from a performing loan, and simultaneously use its unexercised Article 9 remedies to defeat a judgment creditor's garnishment lien.

- The treatment of discretionary future advances under Fla. Stat. § 679.3232, which further underscores that Cogent's security interest remains a lien on Aery's receivables, not a transfer of ownership that would take the CCF indebtedness outside the garnishment statutes.

Those arguments and authorities independently support denial of Aery's motion and confirm that the Cleveland Clinic receivables remain Aery's property for garnishment purposes.

## CONCLUSION

For the reasons discussed herein, Talentscale respectfully requests that the Court deny Aery Aviation LLC's Motion to Dissolve the Writ of Garnishment issued to Cleveland Clinic Foundation and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

*/s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 17661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff /*
*Judgment-Creditor Talentscale, Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), I hereby certify that this Memorandum contains 1,290 words, excluding the case style, signature block, and certificates, as counted by Microsoft Word.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on February 12, 2026 which automatically sends notice to all counsel or parties of record.

By:    */s/ Kenneth E. Chase*
       Kenneth E. Chase