UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case No. 5:25-mc-00001-TKW-MJF

TALENTSCALE INC.,

     Plaintiff / Judgment-Creditor,

v.

AERY AVIATION LLC,

     Defendant / Judgment-Debtor.

and

CAPITAL BANK, N.A.,

     Garnishee.

_____/

**TALENTSCALE INC'S OPPOSITION TO
AERY AVIATION LLC'S MOTION TO DISSOLVE
<u>WRIT OF GARNISHMENT TO CAPITAL BANK, N.A.</u>**

Plaintiff/Judgment-Creditor Talentscale, Inc. ("Talentscale") files this Opposition to the Motion to Dissolve the Writ of Garnishment issued to Capital Bank, N.A. ("Capital Bank") filed by Defendant/Judgment-Debtor Aery Aviation LLC ("Aery") at Doc. 204.

**<u>INTRODUCTION</u>**

Aery's Motion to Dissolve the Capital Bank writ lacks any identification of an untrue factual allegation in Talentscale's motion for writ, as required by Fla. Stat. 77.07(2). Instead, Aery disputes Talentscale's legal conclusion that funds held by

Capital Bank are "collectible." Those funds are certainly collectible, as Prudent Capital collected some of them a couple months ago, but it left $1,142,467.20 in the account because that's the exact $1,142,467.20 principal balance owed to Talentscale.

Aery's dispute as to the legal concept of whether funds are "collectible" is not a substantive assertion that an "allegation" is "untrue" within the meaning of 77.07(2). It is merely a merits defense on matters which Talentscale has already briefed in its Omnibus Memorandum. Moreover, if a movant could dispute the such legal concepts as whether funds are "collectible" or "garnishable," it would expand standing to an entire universe of potential deniers who cannot articulate a single untrue factual allegation in a motion for issuance of a writ of garnishment. That was not the intent of the limiting language for standing in 77.07(2).

Aery's position is also internally incoherent. Aery insists the Capital Bank account "does not belong to Aery," despite having borrowed those funds, and that it is supposedly "wholly pledged, assigned, and granted to Prudent." But yet, Aery simultaneously invokes 77.07(2), which by its terms is limited to "the defendant and any other person having an ownership interest in the property," to seek dissolution in its own name. If the funds are really Prudent's property, and not Aery's, then Aery lacks the ownership interest needed to move under 77.07(2). Yet Aery so moves anyway. And also, if Aery has the ownership interest required for standing to file a

2

motion under 77.07(2), then Talentscale's allegation that Capital Bank "has collectible assets or funds in its possession" is not untrue. And thus, Aery failed to satisfy its obligation to demonstrate any allegation in the motion for issuance of the writ that is untrue and Aery's motion must be denied. Either way, the statutory predicate fails and the Aery's motion must be denied.

I.    **Section 77.07(2) Requires the Identification of an Untrue Factual Allegation, Not a Legal Disagreement.**

Section 77.07(2) narrowly authorizes a motion to dissolve a writ where "any allegation in plaintiff's motion for writ is untrue." Fla. Stat. 77.07(2). As Talentscale argued in opposing Aery's Cleveland Clinic motion, this language presupposes a challenge to factual allegations in the motion for writ, not to a legal theory or characterization of facts.

In its motion for issuance of the writ to Capital Bank Talentscale correctly asserted that it "believes that Capital Bank, N.A. has collectible assets or funds in its possession" belonging to Aery and within this Court's jurisdiction. Aery does not, and cannot, dispute the underlying facts:

- Capital Bank answered and identified account ending 9918 as an account "belonging to Aery, but pledged, assigned, or otherwise granted to Prudent Capital III, LP."[1]

---

[1] A more accurate statement, which is reflected in the "Collateral Assignment" agreement itself, is: "Pledgor [Aery] hereby pledges, assigns, and grants to Prudent a **security interest** in account number…" Doc. 184-2 at 28 (emphasis added). Various filing parties have obscured the nature of the very object being assigned, to wit: a *security interest* is assigned, not an ownership interest.

- The account exists and is currently holding $1,163,639.64.

- Aery is indebted to Prudent in excess of $9 million under a note and related security documents.

Those facts do not render any factual "allegation" in the writ motion "untrue." Aery's only quarrel is with whether, in light of Prudent's security interest, final judgment of garnishment should be entered. That is a pure legal dispute.

Permitting a judgment debtor to manufacture 77.07(2) standing by re-labeling a legal dispute as a "false allegation" would collapse the statute. Any debtor could simply assert that it "disagrees" with the creditor's allegation that a writ "should" issue or that the creditor "has a right to garnish," and thereby force dissolution practice on every writ, gutting the narrow gatekeeping function that 77.07(2) was designed to serve. The Court should reject that reading and hold Aery to the statute's requirement that it identify a specific factual allegation that is "untrue," which it has not done.

## II. Aery's Standing Under 77.07(2) Collapses Under Its Own Ownership Theory.

Section 77.07(2) authorizes motions to dissolve by "the defendant and any other person having an ownership interest in the property." Fla. Stat. 77.07(2). In its Capital Bank memorandum, Aery repeatedly characterizes the 9918 account as:

- "the Collateral Account as belonging to Aery, but pledged, assigned, or otherwise granted to Prudent Capital III, LP,"

- "subject to a perfected security interest in favor of Prudent," and

4

- "wholly pledged, assigned, and granted to Prudent," such that Aery "has no present right to payment, no right of withdrawal, and no surplus interest in the Collateral Account."

Aery's assertions describe a classic Article 9 security-interest scenario. Aery owns the deposit account and has granted Prudent a security interest (a lien) unto it, not a transfer of title. But Aery and Prudent also repeatedly conflate and suggest that the account "does not belong to Aery" and that Talentscale is improperly trying to "encumber what belongs to a third-party." That ownership toggle is fatal to Aery's standing:

- If, as Aery and Prudent sometimes say, the funds are Prudent's property, then Aery has no "ownership interest in the property" within the meaning of 77.07(2) and lacks standing to move to dissolve at all. Under that version of events, only Prudent would be a proper movant, and Prudent has already proceeded under the distinct, ownership-focused procedure in Fla. Stat. 77.16, which Talentscale has separately addressed in its Omnibus Memorandum.

- If instead, as Capital Bank's Answer and Prudent's own security documents reflect, the account legally "belongs to Aery" and is merely collateral for Prudent's loan, then Aery has the ownership interest needed to file under 77.07(2), but Talentscale's allegation that Capital Bank holds "collectible" funds owing to Aery is plainly not "untrue." In that scenario, Aery's dispute is solely over whether Prudent's lien has priority over Talentscale's garnishment lien, which is not a proper basis to dissolve under 77.07(2).

Aery cannot have it both ways. It cannot disclaim ownership to bolster Prudent's priority arguments while simultaneously invoking a statute that presupposes an ownership interest in the defendant. As Talentscale has argued in the Cleveland Clinic context, a party that insists its property "never becomes

unencumbered property" and is "beyond [its] dominion and control" cannot simultaneously claim a sufficient ownership interest to trigger 77.07(2). The same logic applies with equal or greater force here.

### III. Prudent's Own Affidavit Confirms the Capital Bank Funds Are Aery's Property, Not Prudent's.

Prudent's July 31, 2025 affidavit (ECF No. 184-2) further undercuts any suggestion that Prudent owns the funds in the 9918 account and reinforces that the account is Aery's property subject to a security interest:

- Prudent expressly avers that the $3,000,000 initially placed into the Capital Bank collateral account "was funded from the Note." 184-2 ¶10. That is the language of a loan: Prudent advanced $3,000,000 to Aery, and Aery became indebted for that amount.

- As of June 30, 2025, Prudent reports that the balance in the collateral account was $3,085,694.12, again treating that account as an asset securing Aery's obligations under the Note, not as Prudent's property. 184-2 ¶14.

- Prudent then charges interest at a face rate of 17.5% on a principal balance of $7,636,369, but calculates interest on a larger figure that appears to include principal + accrued interest + late fees of approximately $10,539,244, resulting in $158,821 of interest over 31 days, about $5,123.26 per day, or roughly $1,869,989.19 over a year. 184-2 at 5. On a $7,636,369 principal balance, that is an effective rate around 24%, dangerously close to Florida's usury maximum.

If Prudent truly owned the funds in the Capital Bank account, it would not be charging Aery nearly 24% annual interest on them. It would simply be earning a return on its own capital. Treating the 9918 balance as part of Aery's debt base

6

confirms that, in Prudent's own accounting and economics, the account is Aery's property securing Aery's debt, not Prudent's property.

That conduct aligns exactly with Talentscale's "collateral, not ownership" argument. Prudent is a lender charging interest on loans outstanding to Aery, and it is not the owner of the funds in the collateral account. It therefore lacks the ownership interest required to move to dissolve a writ under either Fla. Stat. 77.07(2) or 77.16.

## IV. Prudent's Subordination Agreement and Lack of Enforcement Rights Further Defeat Standing.

Talentscale has previously demonstrated that Prudent's security interest is subordinated to Cogent Bank pursuant to a written subordination agreement. In its filings, Prudent did not dispute or even address that subordination agreement, effectively conceding that it has agreed to abstain from exercising remedies against the subject collateral at this time.

A party that (a) has no ownership interest in the collateral (holding only a security interest) and (b) has contractually precluded itself from exercising remedies against that collateral at this time cannot plausibly claim to be:

- "a person other than the defendant" whose "property" is in the garnishee's hands under Fla. Stat. 77.16, or

- an "other person having an ownership interest" for purposes of Fla. Stat. 77.07(2).

7

Not only does Prudent lack ownership of funds it loaned to Aery and on which it charges Aery interest, it is affirmatively barred by its own subordination agreement from executing against those funds so long as Cogent's debt remains outstanding. That double barrier destroys any plausible basis for Prudent to move to dissolve or quash the writ and underscores why Aery cannot bootstrap Prudent's lien into a basis for its own 77.07(2) motion.

## V. "Pledge and Assignment" Is an Assignment of a Security Interest, Not of Ownership or Title.

Prudent's Collateral Assignment of Deposit Account (Exhibit D to its affidavit, ECF No. 184-2) unambiguously confirms that Prudent holds a security interest, not ownership:

- Exhibit D describes a "pledge and assignment" of a security interest in the deposit account; it does not purport to convey ownership of the account itself. 184-2, Ex. D.

- Under Article 9 and Florida law, an "assignment" can be either (i) an assignment of the underlying receivable (potentially transferring ownership) or (ii) an assignment of a security interest (leaving ownership with the debtor).

Here, the structure, language, and economics of the relationship clearly show that Exhibit D is an assignment of a security interest, not a transfer of title. Any attempts by Aery or Prudent to conflate an "assignment of a security interest" with an "assignment of ownership" through vague references to "pledge" or "assignment"

8

collapse under scrutiny. Like Cogent, Prudent is merely the holder of a garden-variety security interest.

Because Prudent is not an owner of the funds it loaned, and has contractually surrendered its right to execute on those funds while Cogent's facility remains in place, it has no standing to move to quash or dissolve Talentscale's writ and no basis to defeat Talentscale's motion for final judgment in garnishment.

## VI. Talentscale Incorporates Its Omnibus Memorandum and CCF Opposition.

To avoid duplication, Talentscale incorporates by reference the points and authorities set forth in:

- Talentscale's Omnibus Memorandum in Support of Garnishment Relief and in Opposition to Motions to Quash and to Dissolve Writs of Garnishment, ECF No. 209, which addresses, among other things:

  - The distinction between a security interest (lien) and ownership under Florida law and Article 9.

  - The treatment of future advances and the equitable-lien relief warranted by Aery and its lenders' conduct.

- Talentscale's Opposition to Aery's Motion to Dissolve the Writ of Garnishment to Cleveland Clinic Foundation, ECF No. 212, which explains why:

  - Aery's challenge to Talentscale's statement that it "believes" the garnishee has collectible funds does not identify any "untrue" factual allegation under 77.07(2).

  - Aery cannot simultaneously disclaim ownership to avoid garnishment and claim sufficient ownership to invoke 77.07(2).

9

Those arguments apply with full force to Aery's Capital Bank motion and together with the additional Prudent-specific points above independently warrant its denial.

## CONCLUSION

For the reasons discussed herein, and in other filings which are incorporated by reference, Aery's motion should be denied.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

*/s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 17661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff /*
*Judgment-Creditor Talentscale, Inc.*

10

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), I hereby certify that this Memorandum contains 2,071 words, excluding the case style, signature block, and certificates, as counted by Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on February 16, 2026 which automatically sends notice to all counsel or parties of record.

By:   */s/ Kenneth E. Chase*
　　　Kenneth E. Chase